**PETTY et al., Appellants,**

v.

**WAL–MART STORES, INC. et al., Appellees.**

[Cite as *Petty v. Wal-Mart Stores, Inc.*, 148 Ohio App.3d 348, 2002-Ohio-1211.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19067

Decided March 15, 2002.

</div>

John A. Smalley, Ronald J. Maurer, Gerald L. Bader, Jr., and Franklin D. Azar, for appellants.

Matthew W. Lampe, Jeffrey S. Sutton, Brian G. Selden and Lori A. Clary, for appellees.

---

FAIN, Judge.

{¶ 1} This is an appeal from a denial of class certification. The suit was brought by plaintiff-appellants Cathy Petty, Lisa Cottongim, Linda Brown, and Arthur Harris on behalf of themselves and other similarly situated individuals

against defendant-appellees Wal–Mart Stores, Inc., Wal–Mart Stores East, Inc., Sam's East, Inc., and three store managers (hereinafter collectively referred to as "Wal–Mart"). The plaintiffs contend that the trial court abused its discretion by finding that the class was not identifiable and denying class certification.

{¶ 2}   We conclude that the trial court did not abuse its discretion in denying class certification. We find it unnecessary to decide whether we agree with the trial court that the class was not sufficiently identifiable based upon the definitions advanced by the plaintiffs. We conclude that the record demonstrates that the plaintiffs failed to make the showing of predominance and superiority required for class certification. Therefore, we find that the trial court appropriately denied certification, and the order denying class certification is affirmed.

I

{¶ 3}   Petty, Cottongim, Brown, and Harris (hereinafter collectively referred to as "Petty") filed this action alleging that Wal–Mart has engaged in wage and hour violations, and seeking compensatory and punitive damages. The gravamen of the action is that long-standing practices and procedures of Wal–Mart forced employees to work "off the clock" and to forgo rest and meal breaks, contrary to written policy and oral agreements.

{¶ 4}   Petty filed a motion seeking certification of a class consisting of "all current and former hourly employees of Ohio Wal–Mart stores who have been required and/or permitted to work off the clock without compensation and/or miss their lunch and meal breaks from the period beginning fifteen years prior to the filing of the complaint." Wal–Mart filed a memorandum in opposition to the motion to certify, arguing that Petty had failed to meet the certification requirements of Civ.R. 23. In a reply memorandum, Petty modified and broadened the class sought to certified to include "all past and present Wal–Mart employees."[1]

{¶ 5}   The record includes the depositions of the four named plaintiffs and numerous affidavits and depositions of other Wal–Mart employees. This evidence indicates that many of the witnesses had experienced the conduct alleged in the complaint and defined in the first class definition. The four named plaintiffs all testified that they had been pressured to work off the clock and had not received all of their rest and meal breaks. However, there was also evidence that some of the employees who missed breaks did so for reasons other than pressure from Wal–Mart. Specifically, there was testimony that some employees missed breaks or meals in order to leave work early; some employees forgot to

---

1.   The record indicates that Wal–Mart opened its first stores in Ohio in 1988. Since that time, it has employed 174,000 people in various positions in Ohio.

clock in or out; and some did not clock in or out so that they could take longer breaks.

{¶ 6} The trial court denied the requested certification, finding that the class was not sufficiently identifiable under either definition advanced by the plaintiffs. The trial court also stated that if the first definition advanced by the plaintiffs could be suitably refined, then the class would meet all other certification requirements. Petty appeals from the order denying class certification.

## II

{¶ 7} The sole assignment of error advanced by Petty is as follows:

{¶ 8} "The trial court abused its discretion and erred as a matter of law when it denied class certification due to a finding of no identifiable class."

{¶ 9} A trial court enjoys broad discretion in determining class action certification. *Baughman v. State Farm Mut. Auto. Ins. Co.* (2000), 88 Ohio St.3d 480, 483, 727 N.E.2d 1265. However, the Ohio Supreme Court has established clear standards that must be met before the trial court may certify a class. See *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 521 N.E.2d 1091. Specifically, a trial court must make seven affirmative findings; two of these findings are implicitly required by Civ.R. 23, while the remaining five are explicitly set forth in the rule. Id. at paragraph one of the syllabus. The trial court must find, by a preponderance of the evidence, that all seven requirements have been met in order to grant class certification. Id. at 94, 521 N.E.2d 1091.

{¶ 10} The first implicit prerequisite is the existence of an identifiable and unambiguous class. Id. at 96, 521 N.E.2d 1091. The second implicit prerequisite is that the class representatives must be members of that unambiguous and identifiable class. Id. Four of the explicit prerequisites are set forth in Civ.R. 23(A). A member of a class may sue as a representative party on behalf of all class members only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Id. at 97, 521 N.E.2d 1091. These four requirements are often referred to as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively. The final explicit prerequisite is set forth in Civ.R. 23(B). It requires a finding that the proposed action falls within one of its three applicable subsections. In this case, the parties acknowledge that Civ.R. 23(B)(3) is the applicable subsection.

{¶ 11} The trial court denied certification upon the ground that the putative class was not sufficiently identifiable under either definition proposed by Petty.

{¶ 12} "[T]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Hamilton v. Ohio Sav. Bank* (1998), 82 Ohio St.3d 67, 71–72, 694 N.E.2d 442, citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure (2d Ed.1986) 12–121, Section 1760. "Thus, the class definition must be precise enough 'to permit identification with a reasonable effort.'" Id., citation omitted. At the class certification stage, issues going to the merits of the action may not be determined. *Ojalvo v. Bd. of Trustees of Ohio State Univ.* (1984), 12 Ohio St.3d 230, 233, 12 OBR 313, 466 N.E.2d 875, citation omitted.

{¶ 13} We begin with the definition originally advanced by Petty, which consists of all employees who were required or permitted to work off the clock or miss breaks and meals. In the motion for certification, Petty argued that the trial court could determine the class by relying on Wal–Mart's records. However, the trial court rejected this argument:

{¶ 14} "[P]laintiffs seek to identify the class through Wal–Mart's business records and time clock exceptions. Wal–Mart's time clock records merely show whether an employee took all of his or her breaks and meals, and whether the employee punched in on time. Even if the report shows that an employee missed a break or meal, it does not give the reason for the missed break. An employee may have forgotten to punch out but still took a break, skipped a break to refrain from smoking, or skipped a break to leave work early. These records clearly do not tell the Court whether an employee missed a break because she was required or permitted to by Wal–Mart.

{¶ 15} "In addition, time clock records only show the hours of work for which the employee was 'on the clock.' These records will not assist the Court in determining which employees were required or permitted by Wal–Mart to work off the clock. Determining which employees are members of the class will require an inquiry into the facts of each employee's case. Given that there are 174,000 potential plaintiffs in this case, use of Wal-mart's employment records would not permit identification of class members within a reasonable effort. Plaintiffs have specified no other means by which the Court could identify potential class members. This Court is left with the burden of a highly individualized adjudication to determine which of the 174,000 employees qualify as class members. This is not administratively feasible."

{¶ 16} Upon review of the file before us, we agree with the trial court. There is no administratively feasible method for determining the class under the first definition. The trial court would have to make individual inquiries into each putative class member's exposure to the alleged conduct. We agree with the trial

court's determination that the class, as defined initially by Petty, is not identifiable.

{¶ 17}  Petty later defined the class as including all 174,000 past and present Ohio Wal–Mart employees.  Although this definition was not set forth in the complaint or the motion for certification filed by Petty, it was addressed by the trial court, which found that this definition must also fail because it is clear from the evidence that not all the putative class members were required or permitted to work off the clock or miss meal breaks.  Petty cites *Hamilton*, supra, *Cope v. Metro. Life Ins. Co.* (1998), 82 Ohio St.3d 426, 696 N.E.2d 1001, *Baughman*, supra, and *Warner*, supra, in support of her claim that the second definition is sufficient.

{¶ 18}  Wal–Mart argues that this description of the class is overly broad in that it encompasses employees of Wal–Mart who were not exposed to the alleged conduct of Wal–Mart.  In fact, the crucial element of wage and hour violations is not even mentioned in Petty's second definition.  As defined, the persons who were exposed to the conduct would be a subset of the class rather than the class.  If this type of class were permitted, plaintiffs would be able to define a class as broadly as possible in the hope of netting a certain percentage of injured members.  This practice would render the class action vehicle unduly cumbersome, and ultimately ineffective.  Without a definition of the class related to the plaintiff's theory of recovery, the trial court would have to conduct individualized inquiry with respect to each individual's exposure to the alleged conduct of Wal–Mart in order to determine whether that individual was the subject of tortious conduct by Wal–Mart, which would obviate the purpose of class actions.

{¶ 19}  Wal–Mart argues that the four cases cited by Petty are distinguishable;  that in all four cases, the trial court could reasonably ascertain the members of the class by relying upon readily available records.  In *Warner*, supra, records indicating who lived within a certain radius of a waste disposal site could be ascertained from available property records.  In *Hamilton, Cope*, and *Baughman*, supra, the class members could be ascertained by the defendant's own records.  Furthermore, in all four cases, it appears that the classes were limited to people who were actually exposed to the alleged harmful conduct.  In this case, Wal–Mart argues that although the members of the expanded, overly broad class could be determined from Wal–Mart's employment records, this class is impermissible because it has been expanded beyond a rational relationship to the plaintiffs' theory of recovery.

{¶ 20}  The test of class identifiably is whether means are specified at the time of the certification that will permit a determination whether a particular individual is a member of the class.  *Hamilton*, supra, at 73, 694 N.E.2d 442.  It appears that the expanded class proposed by Petty, all past and present Ohio Wal–Mart

employees, satisfies this test, because the identity of these class members can be ascertained from Wal–Mart's records.

{¶ 21}   In our view, the problem with the expanded class proposed by Petty is not that its members are not identifiable.   The problem is that it has been expanded so far beyond any rational relationship to the plaintiffs' theory of recovery that no common issues predominate. This takes us to Wal–Mart's alternate argument.

{¶ 22}   We agree with Wal–Mart that the denial of class certification in this case is compelled by Petty's failure to demonstrate that common issues predominate.   The third subsection of Civ.R. 23(B) specifies that the trial court must find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."   This cause of action fails that test.

{¶ 23}   In order to satisfy this portion of the rule, a court must consider the following factors:   (a) the interest of members of the class in individually controlling the prosecution of separate actions, (b) the extent and nature of any litigation concerning the controversy already commenced by members of the class, (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (d) the difficulties likely to be encountered in the management of a class action.   Civ.R. 23(B)(3).

{¶ 24}   Although a court may not determine the merits of the action at the class certification stage, it may, and must, examine the nature of the underlying claims for the purpose of determining whether common questions predominate.   *George v. Ohio Dept. of Human Serv.* (2001), 145 Ohio App.3d 681, 763 N.E.2d 1261.   "It is now well established that 'a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position."   *Cope v. Metro. Life Ins. Co.* (1998), 82 Ohio St.3d 426, 429–430, 696 N.E.2d 1001, citation omitted.   This requires a generalized body of evidence sufficient to prove or disprove an issue, not just some generalized evidence that is arguably relevant to an issue.   In *Baughman,* supra, for example, a class of policyholders based claims against an insurer upon its use of standard forms and routinized procedures, combined with a common omission, across the entire class, to inform policyholders that multiple uninsured and underinsured motorist policies in the same household were a waste of money because they could not be stacked.   Id. at 490, 727 N.E.2d 1265.   Similarly, the class action in *Cope v. Metro. Life Ins. Co.,* supra, involved standard forms and routine procedures—replacement life insurance policies sold as new—that were common to the entire class.   Id. at 427, 696

N.E.2d 1001. In each of those cases, unlike in the case before us, there existed a generalized body of evidence, common to the entire class, that could be relied upon to prove, or to disprove, the claims of the class.

{¶ 25} Petty contends that we cannot consider this issue because the trial court explicitly ruled in her favor with regard to the issue of predominance and that Wal–Mart failed to appeal that decision. ·However, we may affirm the judgment of a trial court upon grounds other than those stated by the trial court if we conclude that the record compels affirmance on those grounds. Because Wal–Mart is not seeking to vacate or change the order of the trial court denying class certification, it is not required to have cross-appealed from that order.[2]

{¶ 26} The issues in this case are individual to each putative plaintiff. For example, there is evidence that some of the plaintiffs were expressly required to work off the clock by their managers, while others perceived pressure and thought that they had to do so. Some of the plaintiffs testified that they merely chose to work off the clock. There are also issues regarding whether each of the managers in the more than one hundred Ohio stores knew that their employees were working off the clock, and whether they knowingly permitted them to do so. Also, there is evidence that some plaintiffs did not bother to clock in or out regardless of whether they took their breaks and meals, and that some purposely chose not to take their breaks and meals for reasons unrelated to work, e.g., some wanted to leave work early, so they skipped breaks and meals, and one putative plaintiff who was trying to quit smoking did not take breaks in order to avoid the temptation to smoke.

{¶ 27} Also, the evidence in the record indicates that the damages provable by each putative class member will vary widely. With regard to the issue of differing damages, we note that the "overwhelming weight of authority" indicates that class certification should not be denied solely on the basis of disparate damages. *Hamilton v. Ohio Sav. Bank* (1998), 82 Ohio St.3d 67, 81, 694 N.E.2d 442, citation omitted. However, disparate damages may present an adequate basis for denial in some cases. Id. In this case, the damages are not susceptible of class-wide proof because there is no acceptable method of computing the damages on a class-wide basis. The damages will be highly individualized and depend on the testimony of each employee to determine how many breaks or meals they missed, how much time they were required to spend working off the clock, as well as the amount of their wages. Therefore, we find that the disparate damages supports the denial of the class certification.

---

2. Petty filed a motion to strike the portions of Wal–Mart's appellate brief dealing with the remaining six certification requirements. That motion is hereby overruled.

{¶ 28} Petty has failed to demonstrate the existence of a single issue in this case that is susceptible of proof or disproof by a body of general evidence applicable to the entire class. Without at least one issue that can be determined on a class-wide basis, there is no point to adjudication by means of a class action—every issue in the case will have to be determined by individual adjudication, with evidence unique to that particular class member.

{¶ 29} Because we conclude, on this record, that Petty has failed to demonstrate the existence of one or more issues common to the entire class, there is no common issue to predominate, and the trial court properly denied class action certification, even if it may have done so for the wrong reason. Petty's sole assignment of error is overruled.

## III

{¶ 30} Petty's sole assignment of error having been overruled, we affirm the trial court's order denying class action certification.

Judgment affirmed.

BROGAN and FREDERICK N. YOUNG, JJ., concur.