ALEX HARRISON, KAREN HICKS, AND PATRICIA POLK, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS v. WAL-MART STORES, INC., A DELAWARE CORPORATION, SAM'S CLUB, AN OPERATING SEGMENT OF WAL-MART STORES, INC., AND RICHARD .ROES 1 THROUGH 75 AND JOHN DOES 1 THROUGH 10, STORE DISTRICT, CLUB/GENERAL AND REGIONAL MANAGERS, DEFENDANTS

No. COA04-989

(Filed 7 June 2005)

**1. Appeal and Error— appealability—denial of class certification—substantial right**

The appeal of an interlocutory order denying class certification has been held to affect a substantial right, and N.C.G.S. § 7A-27(d)(1) allows review.

**2. Class Actions— certification—prerequisites—not shown**

The prerequisites for a class action include a showing by the moving party that the unnamed members of the class have an interest in the same issues, that common issues dominate individual issues, and that there are no conflicts of interest between representatives and members of the class. Here, the trial court did not abuse its discretion by denying class certification for "all current and former hourly employees" employed at any Wal-Mart store in North Carolina subsequent to a certain date in an action by former Wal-Mart employees based upon alleged wage and hour contractual and statutory violations.

Appeal by Plaintiffs from order entered 11 March 2004 by Judge W. Douglas Albright in Superior Court, Forsyth County. Heard in the Court of Appeals 12 April 2005.

*Bell, Davis & Pitt, P.A., by William K. Davis, Stephen M. Russell, and Kevin G. Williams, for plaintiff-appellants.*

*Womble Carlyle Sandridge & Rice, PLLC, by Burley B. Mitchell, Jr., Kurt D. Weaver, Sean E. Andrussier, and Elaine Whitford, for defendant-appellees.*

WYNN, Judge.

In order to succeed on a motion for class certification, the moving party must demonstrate, *inter alia*, that: (1) the named and unnamed members of the proposed class have an interest in the same issues of law or fact; (2) common issues predominates over issues

affecting only individual class members; and (3) no conflicts of inter-est exist between the named representatives and members of the class. *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 280-82, 354 S.E.2d 459, 464-65 (1987). In this case, in which Plaintiffs Alex Harrison, Karen Hicks, and Patricia Polk, on behalf of themselves and all others similarly situated, contend that Defendants Wal-Mart Stores, Inc. and Sam's Club, Inc. (collectively "Wal-Mart") engaged in widespread wage and hour violations, Plaintiffs allege that the trial court erred in determining that the prerequisites for class certifica-tion were not met. Because the trial court's determinations were not "manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision[,]" *Frost v. Mazda Motor of Am., Inc.*, 353 N.C. 188, 199, 540 S.E.2d 324, 331 (2000) (quotations and citations omitted), we affirm the order of the trial court.

The record reflects that, on 29 November 2000, Plaintiffs, two for-mer Wal-Mart employees and a former Sam's Club employee, filed a class action against Defendants. Plaintiffs alleged that, in contraven-tion of Wal-Mart policies and unwritten contracts with Plaintiffs, Wal-Mart engaged in widespread wage and hour abuses, including failing to record and pay for all of the time employees were required to work and failing to permit employees to take or complete lunch and rest breaks. Plaintiffs pled six claims for relief: breach of contract for off-the-clock work, breach of contract for missed rest and meal breaks, quantum meruit, unjust enrichment, tortious interference with con-tractual relations, and violations of the North Carolina Wage and Hour Act.[1]

On 4 August 2003, Plaintiffs moved for class certification. Plaintiffs' proposed class was comprised of "all current and former hourly employees of Wal-Mart Stores, Inc. [] in North Carolina . . . who were employed by Wal-Mart on or subsequent to November 29, 1997." The record included affidavits and depositions of Wal-Mart employees who indicated they were not required to work off the clock, were not deprived their rest and meal breaks, or worked off-clock and missed breaks for reasons other than pressure exerted by Wal-Mart.

On 11 March 2004, the trial court filed an order denying Plain-tiffs' motion for class certification. The trial court made numerous findings of fact and concluded, *inter alia*, that: (1) Plaintiffs' pro-

---

1. Plaintiffs filed an amended complaint on 18 January 2001 and a second amended complaint on 15 November 2002 and dismissed their claims as to the individ-ual defendants on 31 July 2003.

posed class was overbroad and infeasible; (2) individual issues would predominate over common issues; and (3) conflicts of interest existed amongst the members of the proposed class. From this order, Plaintiffs appeal.

## I. Interlocutory Appeal

[1] Preliminarily, we note that the order denying Plaintiff's motion for class certification is interlocutory, *i.e.*, was "made during the pendency of an action [and did] not dispose of the case, but instead [left] it for further action by the trial court to settle and determine the entire controversy." *Carriker v. Carriker*, 350 N.C. 71, 73, 511 S.E.2d 2, 4 (1999); *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) (same). Generally, there is no right of immediate appeal from interlocutory orders. *Travco Hotels v. Piedmont Natural Gas Co.*, 332 N.C. 288, 291, 420 S.E.2d 426, 428 (1992); *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). However, we take this appeal pursuant to North Carolina General Statute section 7A-27(d)(1), allowing review of interlocutory orders affecting a substantial right, because the appeal of an interlocutory order denying class certification has been held to affect a substantial right. N.C. Gen. Stat. § 7A-27(d)(1) (2004); *Frost*, 353 N.C. at 192-93, 540 S.E.2d at 327 (stating that "*denial* of class certification has been held to affect a substantial right because it determines the action as to the unnamed plaintiffs[]" and citing *Perry v. Cullipher*, 69 N.C. App. 761, 762, 318 S.E.2d 354, 355-56 (1984)).

## II. Standard of Review

[2] "The trial court has broad discretion in determining whether a case should proceed as a class action." *Faulkenberry v. Teachers' and State Employees' Ret. Sys. of N.C.*, 345 N.C. 683, 699, 483 S.E.2d 422, 432 (1997) (citation omitted). "Since the decision to grant or deny class certification rests within the sound discretion of the trial court, the appropriate standard for appellate review is whether the trial court's decision manifests an abuse of discretion." *Nobles v. First Carolina Comms., Inc.*, 108 N.C. App. 127, 132, 423 S.E.2d 312, 315 (1992). The trial court's decision constitutes an abuse of discretion where it is "manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision[.]" *Frost*, 353 N.C. at 199, 540 S.E.2d at 331 (quotations and citations omitted). Moreover, "an appellate court is bound by the [trial] court's findings of fact if they are supported by competent evidence." *Nobles*, 108 N.C. App. at 132, 423 S.E.2d at 315 (citation omitted).

### III. Rule 23 Requirements

"The party seeking to bring a class action . . . has the burden of showing that the prerequisites to utilizing the class action procedure are present." *Crow*, 319 N.C. at 282, 354 S.E.2d at 465 (footnote omitted). Requirements for class certification include the following:

> [A] 'class' exists under Rule 23 when the named and unnamed members each have an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members. Other prerequisites for bringing a class action are that (1) the named representatives must establish that they will fairly and adequately represent the interests of all members of the class; (2) there must be no conflict of interest between the named representatives and members of the class; (3) the named representatives must have a genuine personal interest, not a mere technical interest, in the outcome of the case; (4) class representatives within this jurisdiction will adequately represent members outside the state; (5) class members are so numerous that it is impractical to bring them all before the court; and (6) adequate notice must be given to all members of the class.

*Faulkenberry*, 345 N.C. at 697, 483 S.E.2d at 431 (quotation and citations omitted); *see also, e.g.*, *Crow*, 319 N.C. at 282-84, 354 S.E.2d at 465-66 (same). Where all the prerequisites are met, it is within the trial court's discretion to determine whether "a class action is superior to other available methods for the adjudication of th[e] controversy."[2] *Crow*, 319 N.C. at 284, 354 S.E.2d at 466.

### IV. Application

In the case *sub judice*, the trial court concluded that Plaintiffs failed to meet a number of the prerequisites for class certification.[3]

---

2. "[T]he trial court has broad discretion in [deciding whether a class action should be certified] and is not limited to consideration of matters expressly set forth in Rule 23 or in" case law. *Crow*, 319 N.C. at 284, 354 S.E.2d at 466 (citing *Maffei v. Alert Cable TV, Inc.*, 316 N.C. 615, 617, 342 S.E.2d 867, 870 (1986)).

3. While we address several of the trial court's conclusions, to all of which Plaintiffs excepted, Plaintiffs' failure to meet any one of the prerequisites for class certification necessitates the denial of their motion for class certification. *English v. Holden Beach Realty Corp.*, 41 N.C. App. 1, 7-8, 254 S.E.2d 223, 230 ("The party who is invoking Rule 23 has the burden of showing that all of the prerequisites to utilizing the class action procedure have been satisfied.") (quotation omitted), *cert. denied*, 297 N.C. 609, 257 S.E.2d 217 (1979), *overruled on other grounds*, *Crow*, 319 N.C. at 280, 354 S.E.2d at 464.

A. Infeasible Class Definition

The trial court first determined that Plaintiffs failed to define a feasible class.

"[A] 'class' exists under Rule 23 when the named and unnamed members *each* have an interest in either the same issue of law or of fact[.]" *Crow*, 319 N.C. at 280, 354 S.E.2d at 464 (emphasis added); *Faulkenberry*, 345 N.C. at 697, 483 S.E.2d at 431 (same). In a strikingly similar case deemed persuasive authority by the trial court, *Petty v. Wal-Mart Stores, Inc.*, 148 Ohio App. 3d 348, 354, 773 N.E.2d 576, 580 (Ohio 2002), four named plaintiffs brought a class action against Wal-Mart, Sam's East, and store managers for forcing employees to work off the clock and forego rest and meal breaks. The *Petty* trial court found that the plaintiffs' proposed class of all past and present Ohio Wal-Mart employees necessarily failed because it was clear from the evidence that not all members of the putative class had an interest in the alleged wage and hour abuses of being forced to work off the clock and miss breaks. The Court of Appeals of Ohio noted that the persons exposed to the alleged wage and hour abuses would be a mere subset of the proposed class and that "[i]f this type of class were permitted, plaintiffs would be able to define a class as broadly as possible in the hope of netting a certain percentage of injured members[,]" which would "render the class action vehicle unduly cumbersome, and ultimately ineffective" *Id.*

In their motion for class certification, Plaintiffs here defined the proposed class as "all current and former hourly employees" employed at any Wal-Mart in North Carolina "on or subsequent to 29 November 1997."[4] The trial court determined that "[u]ncontroverted evidence presented to the Court establishes that the proposed class includes individuals who did not work off the clock or miss rest breaks or meal periods." This determination is supported by evidence in the record, including affidavits and deposition testimony of Wal-Mart employees who stated that they did not work off the clock or miss breaks. As the proposed class included individuals who were not subject to the wage and hour violations that are the basis of Plaintiffs' claims, the trial court concluded that the proposed class definition "must be rejected." Because not every member of the proposed class would have an interest in this action, *Crow*, 319 N.C. at 280, 354

---

4. In their complaint, Plaintiffs stated they brought suit on behalf of "a class consisting of all current and former hourly employees of Wal-Mart in the State of North Carolina who worked off-the-clock without compensation and/or worked through any part of a rest or meal break within the applicable period of limitations[.]"

S.E.2d at 464, and because in the strikingly similar *Petty*, the Ohio courts found the plaintiffs' proposed class definition, essentially identical to that here, untenable, the trial court's conclusion that Plaintiffs' class definition was overbroad and infeasible was neither manifestly unsupported by reason nor so arbitrary that it could not have been the product of a reasoned decision. *Cf. Carlson v. Carlson*, 127 N.C. App. 87, 94-95, 487 S.E.2d 784, 788 (1997) (where this Court noted the trial court's reasoning was consistent with courts in other jurisdictions, this Court found no abuse of discretion); *State ex rel. Long v. Am. Sec. Life Assurance Co.*, 109 N.C. App. 530, 538, 428 S.E.2d 200, 205 (1993) ("This Court finds the trial court's conclusion to be sound, made with full knowledge of the law as it exists in other jurisdictions, and based upon competent evidence. We, therefore, conclude that the trial court did not abuse its discretion . . . ."). We thus conclude that the trial court did not abuse its discretion in concluding that Plaintiffs failed to propose a certifiable class.

B. Individual Issues Predominate

The trial court further concluded that individual issues, not common issues, would predominate, and thus class certification must fail.

As previously stated, a class " 'exists . . . when the named and unnamed members each have an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members.' " *Faulkenberry*, 345 N.C. at 697, 483 S.E.2d at 431 (quoting *Crow*, 319 N.C. at 280, 354 S.E.2d at 464). In *Falkenberry*, our Supreme Court held that the alleged underpayment of disability benefits due to an allegedly unconstitutional statutory amendment applied to every plaintiff and was a predominant common issue. *Id.* And in *Frost*, 353 N.C. at 190, 540 S.E.2d at 326, our Supreme Court held that the issue of whether a $158 fee charged to all class members was permitted under the uniform written contract signed by all class members constituted a predominant common issue.

Plaintiffs here allege breach of contract for off-the-clock work and breach of contract for missed rest and meal breaks. "In proving a breach of contract, the plaintiff must show: '(1) existence of a valid contract and (2) breach of that contract.' " *Hemric v. Groce*, —— N.C. ——, ——, 609 S.E.2d 276, 283 (2005) (quoting *Poor v. Hill*, 138 N.C. App. 19, 29, 530 S.E.2d 838, 845 (2000)). "It is essential to the formation of any contract that there be mutual assent of both parties to the terms the agreement so as to establish a meeting of the minds.

Mutual assent is normally established by an offer by one party and an acceptance by the other . . . ." *Creech v. Melnik*, 347 N.C. 520, 527, 495 S.E.2d 907, 911-12 (1998) (quotations omitted).

In another case strikingly similar to the one at bar and cited as persuasive authority by the trial court, *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548 (Tex. App. 2002), the plaintiffs brought a class action on behalf of Wal-Mart employees forced to work off the clock and denied rest and meal breaks. The Court of Appeals of Texas, Fourteenth District, held:

> [I]ndividual issues regarding the formation of 350,000 contracts in this case will predominate over any common issues. Appellees claim Wal-Mart made express [and implied] contractual offers of rest and meal breaks during the orientation process. Because each orientation session was conducted by different Wal-Mart personnel at different stores, proof of an oral contract with each class member will require a determination of the terms of the contract through offer and acceptance. Any determination concerning a "meeting of the minds" necessarily requires an individual inquiry into what each class member, as well as the Wal-Mart employee who allegedly made the offer, said and did. A determination must also be made as to the authority of each Wal-Mart manager who allegedly made such an offer and each employee's belief regarding whether that manager had or lacked authority to make the offer.

> Even if appellees establish Wal-Mart had 350,000 oral contracts to provide rest and meal breaks, individual issues regarding the alleged breach of each contract will also predominate over common issues. Affidavits of current and former Wal-Mart employees submitted by appellees raise individual issues. For example, a number of employees state they missed rest and meal breaks, but offer no explanation for why they missed their breaks, *i.e.*, whether store management required the employee to work through the break or whether the employee voluntarily chose not to take a break for personal reasons, or why no time adjustment request form was submitted to reflect the hours worked so the employee could be appropriately compensated.

*Id.* at 557 (footnote omitted).

Here, with regard to contract formation, Plaintiffs concede that "[c]lass members did not have written contracts with Wal-Mart . . . ."

Moreover, "Plaintiffs do not contend that the [employee] Handbook [containing Wal-Mart's policies] is a contract." Plaintiffs instead allege that unwritten, unilateral contracts existed between themselves and Wal-Mart. The trial court held that individual issues predominate as to the formation and terms of Plaintiffs' contracts, stating, *inter alia*, "that the evidence on how the alleged contract[s were] formed will vary from associate-to-associate [sic][,]" that "a determination of the particular terms of each class member's oral, implied or unilateral agreement is going to turn on the individual accounts of conversations and representations made by countless numbers of present and former hourly Personnel Managers[,]" and that "deposition testimony establishes that putative class members have no uniform understanding with respect to the alleged contracts with Wal-Mart." These findings and conclusions are supported by competent evidence, including depositions and affidavits indicating, for example, that: (1) some putative class members learned of the opportunity to take rest and meal breaks prior to employment while others learned of the opportunity to take rest and meal breaks after accepting employment; (2) some putative class members understood their rest breaks to be paid while others understood the breaks to be unpaid; and (3) some putative class members believed they were entitled to meal breaks after eight hours of work while others believed they were entitled to such breaks after six or seven hours of work.

With regard to alleged breaches, the trial court stated "each member of the putative class will be required to show that there was a breach of his or her purported contract." The trial court found that Wal-Mart's Time Clock Archive Reports would not be a reliable source for showing breach, as "[a]ssociates, including named Plaintiff Harrison, admitted that they did not always swipe the time clock when they took their breaks or meal periods." The trial court concluded that, to determine whether a breach occurred, it would need to examine, *inter alia*, why an associate missed his/her breaks. The trial court found that putative class members testified that they missed breaks voluntarily, *inter alia*, in order to leave work early.

We hold that the trial court's findings, which are supported by competent evidence, and conclusions, supported by (strikingly similar) persuasive authority from another jurisdiction, are neither manifestly unsupported by reason nor so arbitrary that they could not have been the result of a reasoned decision. We thus conclude that the trial court did not abuse its discretion in finding that individual issues would predominate with regard to Plaintiffs' breach of con-

tract claims. *Am. Sec. Life Assurance Co.*, 109 N.C. App. at 538, 428 S.E.2d at 205.

Plaintiffs also pled unjust enrichment and quantum meruit. The trial court concluded that those claims:

> will require a person-by-person examination of the circumstances of every missed rest break or meal period to determine whether Wal-Mart was unjustly enriched. Indeed, a person-by-person and event-by-event inquiry will be necessary to determine whether a putative class member even claims unjust enrichment since many putative class members testified that they experienced none of the alleged problems.

While Plaintiffs excepted to this conclusion in their twenty-sixth assignment of error, contending that the trial court "erroneously determined that the plaintiffs' claims for unjust enrichment and quantum meruit would require a person-by-person or event-by-event inquiry[,]" they failed to cite and argue this assignment of error in their appellate briefing. This assignment of error is therefore deemed abandoned. N.C. R. App. P. 28(a).

Finally, Plaintiffs pled violations of North Carolina's Wage and Hour Act, which states that "[a]ny employer who violates the provisions of . . . G.S. 95-25.6 through 95-25.12 (Wage Payment) shall be liable to the employee or employees affected in the amount of their unpaid . . . wages." N.C. Gen. Stat. § 95-25.22(a) (2004). With regard to the wage and hour claim, the trial court found that the requisite proof "will involve an analysis of time records for each putative class member and investigation into any unique issues that may have been present in each particular store at the time of the alleged violations." Plaintiffs assign error to this conclusion, contending the trial court erred "in determining that individual issues predominate over the plaintiffs' common claim that Wal-Mart violated the N.C. Wage and Hour Act by depriving class members rest breaks, failing to compensate class members for rest breaks, and failing to compensate class members for off-the-clock work."

Similar to the breach of contract claims discussed above, the Wage and Hour Act claims would require individual determinations, including which putative class members were subject to the alleged violations and why those putative class members who worked off-the-clock did so, *i.e.*, whether they, for example, missed breaks in order to leave work early. Moreover, in the strikingly similar *Lopez*, the

court noted that the plaintiffs' statutory wage and hour argument, which was not preserved, would require individual inquiries. We find the trial court's conclusion here that individual rather than common issues predominate regarding Plaintiffs' statutory claim to be neither manifestly unsupported by reason nor so arbitrary that they could not have been the product of a reasoned decision.

In sum, the trial court did not abuse its discretion in concluding that individual rather than common issues predominate Plaintiffs' claims.

## C. Existence of Conflicts of Interest

The trial court also determined that the named plaintiffs in the instant case would not adequately represent the class. Plaintiffs argue that this determination was in error.

As previously stated, to bring a class action "the named representatives must establish that they will fairly and adequately represent the interests of all members of the class" and "there must be no conflict of interest between the named representatives and members of the class . . . ." *Faulkenberry*, 345 N.C. at 697, 483 S.E.2d at 431. "This prerequisite is a requirement of due process. It is also specifically imposed by our Rule 23." *Crow*, 319 N.C. at 282, 354 S.E.2d at 465 (citations omitted).

Here, the trial court found that: "[t]here is uncontroverted evidence that some hourly associates [including named plaintiff Polk] . . . had or have supervisory authority over other hourly associates[;]" "[t]he motivation of certain class members to deny that associates under their supervision ever missed a rest break or meal period was borne out by the deposition testimony of a number of witnesses[;]" and there is yet other evidence that "hourly associates who acted as supervisors either directed or knowingly allowed off-the-clock work or caused subordinates to miss their rest breaks and meal periods." The trial court's findings are supported by competent evidence, including depositions of numerous Wal-Mart employees. The findings support the court's conclusion that it could not "certify a class in which some putative class members assert that other putative class members caused or contributed to the wrongs asserted and the latter deny the assertion. This puts class members who acted as supervisors in direct conflict with the class members they supervised." We find this conclusion to be neither manifestly unsupported by reason nor so arbitrary that it could not have been the product of

a reasoned decision. The trial court therefore did not abuse its discretion in denying class certification on this basis.

## V. Conclusion

In sum, we hold that the trial court's order concluding that Plaintiffs failed to meet a number of the prerequisites for class certification was neither manifestly unsupported by reason nor so arbitrary that it could not have been the result of a reasoned decision. *Frost*, 353 N.C. at 199, 540 S.E.2d at 331. The trial court therefore did not abuse its discretion in denying Plaintiffs' motion for class certification. We find all of Plaintiffs' arguments and assignments of error to be without merit and affirm the order of the trial court.

Affirmed.

Judges TYSON and ELMORE concur.