**BLITZ v. AGEAN, INC.**

[227 N.C. App. 476 (2013)]

JONATHAN BLITZ, on behalf of himself and all others similarly situated, Plaintiff

v.

AGEAN, INC., Defendant

No. COA12-1133

Filed 4 June 2013

1. **Appeal and Error—interlocutory orders—class certification—substantial right**

    The Court of Appeals addressed the merits of plaintiff's interlocutory appeal from the trial court's order denying plaintiff's motion for class certification. An interlocutory order denying class certification affects a substantial right.

2. **Class Actions—class certification—generalized proof**

    The trial court did not err by concluding that plaintiff failed to establish the existence of a class. Plaintiff failed to define a class that was subject to generalized proof and therefore, he failed to show that the trial court abused its discretion in denying its motion for class certification.

3. **Class Actions—class certification—equitable grounds**

    The trial court did not err by denying plaintiff's motion for class certification. Since the Court of Appeals concluded that the trial court correctly denied class certification, there was no need to determine whether it was unjust on equitable grounds.

Appeal by plaintiff from order entered 11 April 2012 by Judge Calvin E. Murphy in Durham County Superior Court. Heard in the Court of Appeals 11 February 2013.

> *DeWitt Law Group, PLLC by N. Gregory DeWitt and Bock & Hatch, LLC, by Phillip A. Bock, pro hac vice, for plaintiff-appellant.*

> *Brown, Crump, Vanore & Tierney, L.L.P., by R. Scott Brown and W. John Cathcart, Jr., for defendant-appellee.*

CALABRIA, Judge.

Jonathan Blitz ("plaintiff"), recipient of unsolicited fax advertisements, brought an action against a restaurant operator that contracted with an advertising business to send faxes, alleging violation of the

Telephone Consumer Protection Act ("TCPA"). Plaintiff appeals from an order denying his motion for class certification. We affirm.

## I. Background

Agean, Inc. ("defendant") owned two restaurants in Durham, Papa's Grill and Front Street Café (collectively "the restaurants"). Defendant designed a coupon redeemable at either or both of the restaurants. In April 2004, defendant purchased a list from InfoUSA ("InfoUSA list") of approximately 983[1] business fax numbers in the three zip codes surrounding the restaurants. Defendant contracted with a fax broadcaster, Concord Technologies, Inc. ("Concord"), to fax coupons for defendant's restaurants to the numbers on the InfoUSA list. During 2004, Concord transmitted by fax 7,000 coupons for defendant's restaurants to the fax numbers on the InfoUSA list. Plaintiff's name was included on the InfoUSA list and he received five, one-page, fax transmissions, containing defendant's restaurant coupons. Plaintiff claimed that he did not request any advertisements from defendant, nor did he give defendant permission to send him fax transmissions.

Plaintiff filed a complaint and subsequently, on 11 February 2005, filed an amended class action complaint in Durham County District Court, seeking, *inter alia*, class certification, statutory damages and a statutory injunction for violation of the Federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The TCPA, *inter alia*, prohibits the transmission of "unsolicited advertisements" to fax machines. U.S.C. § 227(b)(1)(C) (2000 & Supp. IV 2004). The case was transferred to the North Carolina Business Court on 20 January 2006. On 17 October 2006, plaintiff filed a motion for class certification which defined the class as:

> All persons and other entities to whom Defendant sent or caused to be sent, one or more facsimile advertisement transmissions promoting the restaurants of Defendant from February 12, 2001 until February 11, 2005 inclusive, and excluding those persons and other entities who had an established business relationship with Defendant at the time said facsimile advertisement transmissions were sent.

The trial court denied the motion and plaintiff appealed. This Court, *inter alia*, reversed and remanded the trial court's order denying class

---

1. "The InfoUSA invoice shows [d]efendant bought 983 fax numbers but the excel file [defendant supplied to plaintiff] ... contained 978 entries."

certification in *Blitz v. Agean, Inc.*, 197 N.C. App. 296, 677 S.E.2d 1 (2009) (*"Agean I"*).

On 18 May 2011, plaintiff filed another amended class action complaint, defining the class as "[t]he holders of the 978 telephone numbers contained in the InfoUSA database ... between the dates of February 1, 2004 and December 31, 2004, inclusive." On 11 April 2012, the trial court denied plaintiff's motion, concluding that plaintiff had failed to establish the existence of a class because plaintiff "failed to provide a theory of generalized proof that allows for common questions to predominate over individual inquiries." In addition, the trial court concluded that class certification would be "unjust on equitable grounds" because it would "provide plaintiff with inappropriate leverage in settlement negotiations." Plaintiff appeals.

## II.  Interlocutory Appeal

**[1]**  As an initial matter, we note that plaintiff's appeal is interlocutory. Generally there is no immediate right of appeal from interlocutory orders. *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). However, immediate appeal of an interlocutory order is available when the order "affects a substantial right." *Sharpe v. Worland*, 351 N.C. 159, 161-62, 522 S.E.2d 577, 579 (1999) (quotation marks omitted). "[T]he appeal of an interlocutory order denying class certification has been held to affect a substantial right[,]" and therefore, plaintiff's appeal is immediately appealable. *Harrison v. Wal-Mart Stores, Inc.*, 170 N.C. App. 545, 547, 613 S.E.2d 322, 325 (2005).

## III.  Standard of Review

In general, "appeal from the denial of class certification involves an abuse of discretion standard of review[,]" however, "in appeals from the grant or denial of class certification this Court reviews issues of law, such as statutory interpretation, *de novo*." *Agean I*, 197 N.C. App. at 299-300, 677 S.E.2d at 4. After conducting a *de novo* review of "the law underpinning the trial court's denial of class certification, we [then] turn to the specific facts of the instant case to determine if denial of class certification was proper." *Id.* at 310, 677 S.E.2d at 10. "[A]n appellate court is bound by the trial court's findings of fact if they are supported by competent evidence." *Harrison*, 170 N.C. App. at 547, 613 S.E.2d at 325 (citation and brackets omitted). A trial court has abused its discretion if its decision "is manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision[.]" *Id.* (citation omitted).

## IV. Class Certification

**[2]** Plaintiff argues that the trial court erred by concluding that plaintiff had failed to establish the existence of a class. We disagree.

A class action may be initiated "[i]f persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued." N.C. Gen. Stat. § 1A-1, Rule 23 (2011). "The party seeking to bring a class action ... has the burden of showing that the prerequisites to utilizing the class action procedure are present." *Agean I*, 197 N.C. App. at 302, 677 S.E.2d at 5. If all the prerequisites are met, the trial court has discretion to determine whether a class action is superior to other available methods for adjudication of the controversy. *Id.*

The first prerequisite for certification of a class action is whether a class exists. *See Crow v. Citicorp Acceptance Co., Inc.*, 319 N.C. 274, 354 S.E.2d 459 (1987); *Agean I*, 197 N.C. App. at 302, 677 S.E.2d at 5. "[A] 'class' exists . . . when the named and unnamed members each have an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members." *Agean I*, 197 N.C. App. at 302, 677 S.E.2d at 5 (citation omitted). This first step is known as the "commonality and typicality" prong of the test. *Id.* The test is whether individual issues will predominate over common ones in terms of being the focus of the litigants' efforts. *Harrison*, 170 N.C. App. at 550-53, 613 S.E.2d at 327-28. "[A] common question is not enough when the answer may vary with each class member and is determinative of whether the member is properly part of the class." *Carnett's, Inc. v. Hammond*, 610 S.E.2d 529, 532 (Ga. 2005).

In the instant case, plaintiff is seeking, for each proposed class member, $500.00 in statutory damages per fax as well as injunctive relief, pursuant to the TCPA. At the time the faxes in question were allegedly sent, the 2004 version of the TCPA was in effect: "It shall be unlawful for any person within the United States ... to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine[.]" *Agean I*, 197 N.C. App. at 303, 677 S.E.2d at 6 (citation omitted). "The term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." *Id.* (citation omitted). Since the TCPA only applies to "unsolicited advertisements"

it is the "[p]laintiff's burden to show the fax advertisements sent to the class were unsolicited." *Id.* at 311, 677 S.E.2d at 10.

The primary issue regarding class certifications involving the TCPA "is whether, under the 'commonality and typicality' prong of the test, individualized issues concerning whether sent fax advertisements were 'unsolicited' predominate over issues of law and fact common to the proposed class members." *Id.* at 303, 677 S.E.2d at 6. In *Agean I*, this Court held that plaintiff did not meet his burden of showing that the fax advertisements were unsolicited, because his class definition did not limit the class to "persons receiving 'unsolicited' fax advertisements" and "the trial court had no basis to determine how many of the fax numbers included in the list represented persons or entities that had given express prior invitation or permission to [d]efendant to receive fax advertisements." *Id.* at 310-11, 677 S.E.2d at 10-11. However, the Court still reversed and remanded the case for reconsideration by the trial court because it disagreed with the trial court's analysis in denying class certification. *Id.* at 311, 677 S.E.2d at 11.

This Court rejected a bright line rule regarding class certification because class certification in TCPA cases depends on the facts of each case. *Id.* at 305, 677 S.E.2d at 7. The Court adopted the reasoning of other courts and found that the only statutory defense to a cause of action based on an unsolicited fax advertisement was a defendant's "prior express invitation or permission[,]" which could not be inferred from an established business relationship. *Id.* at 304-05, 677 S.E.2d at 6. In addition, the Court found that in class certification of TCPA cases, a North Carolina Court should determine whether the plaintiff proceeded with "a theory of generalized proof of invitation or permission" as articulated in *Gene & Gene, LLC v. BioPay, LLC*, 541 F.3d 318 (5th Cir. 2008) and *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wash. 2007). *Agean I*, 197 N.C. App. at 310-11, 677 S.E.2d at 11.

In *Kavu*, where the defendant purchased all the fax numbers from a common source, the Court certified the class because of the common question, "whether the inclusion of the recipients' fax numbers in the purchased database indicated their consent to receive fax advertisements, and there were therefore no questions of individualized consent." *Gene*, 541 F.3d at 328; *Kavu*, 246 F.R.D. at 645. In *Gene*, the defendant used a purchased database of fax numbers but also gathered numbers from other sources, including the defendant's website, trade shows, and lists of affiliated companies. *Gene*, 541 F.3d at 328. That Court held that class certification was inappropriate because the plaintiff could not

"advance a viable theory of generalized proof to identify those persons, if any, to whom [the Defendant] may be liable under the TCPA" as there was evidence that the defendant had obtained consent, the defendant used multiple sources to gather fax numbers and the plaintiff offered "no sensible method of establishing consent or the lack thereof via class-wide proof." *Id.* at 329.

In the instant case, after this Court's decision in *Agean I*, plaintiff amended the definition of the class to include "[t]he holders of the 978 telephone numbers contained in the InfoUSA database ... between the dates of February 1, 2004 and December 31, 2004, inclusive." Plaintiff claimed that there were three common legal and factual questions under the TCPA:

1. Whether Defendant's fax is an advertisement;

2. Whether Defendant violated the TCPA by faxing that advertisement without first obtaining express invitation or permission to do so; and

3. Whether Plaintiff and the other class members are entitled to statutory damages.

The trial court determined that the answer to plaintiff's second question would "be a focal point of the litigants' evidence, and likely direct the outcome of the case."

Plaintiff's amended proposed class definition, "[t]he holders of the 978 telephone numbers contained in the InfoUSA database ... between the dates of February 1, 2004 and December 31, 2004, inclusive," was not limited to individuals or businesses receiving "unsolicited" fax advertisements because it included every number purchased on the InfoUSA list. The trial court found that the restaurants had received numerous requests to fax materials concerning its hours, accommodations and capacity and multiple requests for defendant to fax or email its menus and other materials related to the restaurant's services. Therefore, it was difficult for the court to discern whether members in defendant's proposed "class" had previously consented to receive the faxes. Since consent could potentially be shown for numbers on both defendant's Customer List and the InfoUSA list, plaintiff's proposed class definition did not "explicitly exclude owners of fax numbers who had previously consented to receive faxes." It was plaintiff's burden to exclude the numbers of persons that had authorized receipt of the faxes. However, plaintiff failed to exclude them, therefore, the class was left open to those individuals.

The trial court applied the authorities set forth by this Court in *Agean I* regarding the "commonality and typicality" prong of the class certification test to the facts of this case and determined that there was "no common source from which the [c]ourt [could] determine consent." Therefore, under the facts of the case, plaintiff was "unable to articulate a theory of generalized proof" and thus the litigants' efforts would be focused on "individual questions of whether each class member consented rather than any common questions the class might share." The trial court ultimately concluded that because plaintiff "failed to provide a theory of generalized proof that allow[ed] for common questions to predominate over individual inquiries, they ... failed to establish the existence of a class and therefore [did] not meet *Crow*'s requirements for class certification."

Plaintiff relies on *Kavu*. When reviewing the trial court's certification of a class, the court in *Kavu* found that the question of consent could be easily shown by common proof and would not require individualized evidence. *Kavu*, 246 F.R.D. at 647. Plaintiff claims that because he limited the class to those businesses on the InfoUSA list, the question of whether the class members in the instant case consented to receive faxes from defendant was common to all potential class members. However, plaintiff is mistaken. The trial court found that defendant served over 500,000 meals in its twelve years of service, many of those customers requested information and some of them consented to having information transmitted to them by fax. Since the InfoUSA list included business fax numbers in the three zip codes surrounding defendant's restaurants, the trial court found there was a likelihood of some overlap between numbers from the InfoUSA list and defendant's Customer List. In addition, when *Kavu* was decided, an "arguably applicable" federal regulation stated "if a sender obtains the facsimile number from a [commercial database], the sender must take reasonable steps to verify that the recipient agreed to make the number available for distribution." *Agean I*, 197 N.C. App. at 306, 677 S.E.2d at 7 (citations and quotations omitted). However, the statute "relied upon by the *Kavu* Court was not in effect for the relevant time period" of the instant case. *Id.* at 306, 677 S.E.2d at 8. Therefore, the statute cannot be applied in the same way to plaintiff's class as it was in *Kavu*.

Finally, although plaintiff cites this Court's language in *Agean I* that the "mere possibility" some of the class members will later be removed from the class [because of consent] did not "automatically defeat" class certification, the facts in this case present more than a "mere possibility." In this case, the question remains, if anyone on the list of the 978 fax

numbers gave their consent to receive defendant's coupons. As the trial court noted, plaintiff was the only individual of the 978 recipients who came forward complaining about the fax transmissions. Accordingly, given the evidence, we agree with the trial court's findings and conclusions that the "individualized issues concerning whether sent fax advertisements were "unsolicited" predominate[d] over issues of law and fact common to the proposed class members." The trial court's findings of fact are supported by competent evidence. Plaintiff failed to define a class that was subject to generalized proof and therefore, he failed to show that the trial court abused its discretion in denying its motion for class certification.

### V. Leverage in Settlement Negotiations

[3] Plaintiff also argues that the trial court abused its discretion by refusing to certify the class because of the conclusion that class certification "would principally serve to provide plaintiff with inappropriate leverage in settlement negotiations." The trial court also concluded that "even if the elements [establishing a class] were met," class certification "would be unjust on equitable grounds." Since we have concluded that the trial court correctly denied class certification, there is no need to determine whether or not it would be unjust on equitable grounds.

### VI. Conclusion

Since the trial court's findings of fact are supported by competent evidence, we are bound by them. The trial court's findings support its conclusion that plaintiff failed to provide a theory of generalized proof that allows for common questions to predominate over individual inquiries. Therefore, plaintiff failed to establish the existence of a class. Since the trial court properly denied class certification, the trial court's decision was neither manifestly unsupported by reason nor so arbitrary that it could not have been the result of a reasoned decision. *Harrison*, 170 N.C. App. at 547, 613 S.E.2d at 325 (citation omitted). Therefore, the trial court did not abuse its discretion in denying plaintiff's motion for class certification.

Affirmed.

Chief Judge MARTIN and Judge McGEE concur.