JOURNAL ENTRY AND OPINION
{¶ 1} The appellant, Rysar Properties, Incorporated ("Rysar"), appeals the decision of the Cuyahoga County Court of Common Pleas, Civil Division, which granted the motion for class certification of appellees, Belinda Barber, et al. For the following reasons, we hereby reverse the decision of the lower court granting class certification and remand to the lower court for further proceedings consistent with this opinion.
 {¶ 2} The instant matter stems from a series of home security system contracts between defendant Meister Protection Services ("Meister") and the appellees. The appellees contend these contracts constituted fraud, deception, adhesion contracts, corrupt activity, and violations of the Home Solicitation Sales and Consumer Sales Practice Acts by all defendants.[1]
 {¶ 3} Rysar and defendant, Cresthaven Development ("Cresthaven"), are in the business of selling newly-constructed homes and rehabilitated homes in the greater Cleveland area. Many of the homes at issue in the instant matter are in economically-depressed areas of Cleveland. During the construction and rehabilitation of these homes, it is alleged that Rysar and/or Cresthaven contracted with Meister to pre-install security system wiring and/or entire security systems into the newly-constructed or rehabilitated homes. The appellees offered a contract between only Rysar and Meister in support of this contention. The pertinent portion of the contract between Meister and Rysar to the instant appeal is as follows:
 {¶ 4} "Security System (Burglar Alarm System):
 {¶ 5} "A basic Meister package will be installed into each of Rysar Properties properties, without charge to either the customer, nor Rysar. The basic Meister package includes: * * *.
 {¶ 6} "For each pre-wire and installation of the basic Meister package, there will be NO CHARGE to Rysar Properties, nor the customer, ifthe customer contracts with Meister Protection Services for monitoring services under a 36-month or 60-month agreement.
 {¶ 7} "Should the customer decide, however, NOT to contract withMeister * * *, and only a pre-wire was done to the premises (no equipment installed), then Rysar Properties will be invoiced by Meister * * * at$99.00 for that property not contracted with Meister.
 {¶ 8} "Should the customer decide NOT to contract with Meister * * * for monitoring services after the basic equipment has been installed into the property, then Rysar Properties will be invoiced by Meister * * * at $150.00 for that property not contracted with Meister, with removal of all equipment installed.
 {¶ 9} "Should the customer decide to keep the equipment, but declines monitoring services with Meister * * *, then Rysar Propertieswill be invoiced by Meister * * * at $399.00 for that property (Please note: 85% of the customers decide to contract for monitoring services, and approximately 95% of those customers request additional add-ons)." (Emphasis added.)
 {¶ 10} In accordance with the contact between Meister and Rysar, the purchaser of the home would be under no obligation and would not be liable for any of the services provided by Meister prior to purchasing a home. Further, if the purchaser decided against later contracting with Meister for additional monitoring or services, Rysar, not the home buyer, would be obligated to Meister for the services performed under the contract in accordance with the level of pre-installation performed by Meister.
 {¶ 11} In addition, there is no provision in the contract that the pre-installed system must be removed if the customer elects not to enter into an agreement with Meister. Specifically, if the customer decides to keep the equipment, Rysar is obligated to Meister in the amount of $399.
 {¶ 12} Notwithstanding the fact that the contract between Meister and Rysar imparts no liability on the appellees, the appellees contend that after the homes were purchased, they contacted Meister concerning obtaining services, and Meister coerced the appellees into signing contracts for monitoring services and additional add-ons. It is the manner by which Meister procured the contracts that the appellees contend constituted the allegations of fraud, deception, adhesion contracts, corrupt activity, and violations of the Home Solicitation Sales and Consumer Sales Practice Acts.
 {¶ 13} The appellees allege it was their belief that the alarm system was included in the purchase price of the home, as evidenced by the absence of any mention of the security system in the real estate purchase documents. Thereafter, based on this belief, the appellees argue that Meister coerced them into signing security system contracts. They further contend that Meister informed each that if they did not agree to a security system monitoring contract, then the pre-installed security system wiring or pre-installed security system would be removed from their homes leaving holes in the walls. Further, the appellees assert that Rysar and/or Cresthaven were parties to Meister's actions, even though the contracts for security monitoring were procured after the purchase of the home was consummated with Rysar and/or Cresthaven because Rysar and/or Cresthaven benefitted from the contracts between the appellees and Meister.
 {¶ 14} Of the eight named appellees in the instant complaint, only appellee Queen Miller purchased a home from Rysar and was allegedly coerced into signing a monitoring agreement with Meister prior to purchase. The claims of appellees Barber and Pickens relate to Meister's alleged representations to Barber that she won an alarm system at the Cleveland Rib Burnoff and that Pickens earned free alarm monitoring services for referring customers. Appellees Short, Lewis, Hogan and O'Neal entered into monitoring agreements with Meister after purchasing their homes from Cresthaven. Last, appellees Yvette and William Holmes are named, but their claims are not identified, nor is it alleged in the complaint that they purchased a home from Rysar or Cresthaven.
 {¶ 15} In granting the appellees' motion and supplemental motion for class certification, the lower court certified the following class and subclasses:
 {¶ 16} "Plaintiffs' certified class is defined as all persons who contracted with defendants for security alarms and monitoring services, or similar goods and services. Subclasses of Plaintiffs are composed of all persons who have purchased or will purchase security alarms and monitoring services from Meister in homes that were sold to Plaintiffs from (1) Defendant Rysar Properties since November 17, 1995; and (2) from Defendant Cresthaven Development, Inc. since November 17, 1995. The third subclass is composed of all Plaintiffs that contracted with Meister for security alarms and monitoring services through other deceptive and unconscionable practices since November 17, 1995."
 {¶ 17} The appellant asserts three assignments of error for this court's review. Because the first assignment of error is dispositive of the instant appeal, the remaining two assignments of error are hereby rendered moot. The appellant's first assignment of error states:
 {¶ 18} "I. The trial court erred in granting plaintiff-appellee's motion and supplemental motion for class certification."
 {¶ 19} In Baughman v. State Farm Mut. Auto. Ins. Co. (2000),88 Ohio St.3d 480, the Ohio Supreme Court reaffirmed that the standard of review to be applied for a class action certification case is that of an abuse of discretion. A trial court possesses broad discretion in determining whether a class action may be maintained. That determination will not be disturbed absent a showing that the discretion was abused. Id. An abuse of discretion connotes more than an error of law or judgment. It implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Beder v. Cleveland Browns, Inc. (1998),129 Ohio App.3d 188. The trial court's decision regarding the certification of a class should not be reversed on appeal because the appellate judges would have decided the issue differently had the initial determination been in their hands. Hamilton v. Ohio Savings Bank (1998),82 Ohio St.3d 67.
 {¶ 20} The class action is an invention of equity. Its purpose is to facilitate adjudication of disputes involving common issues between multiple parties in a single action. Planned Parenthood Assn. ofCincinnati, Inc. v. Project Jericho (1990), 52 Ohio St.3d 56, 62. The plaintiff bears the burden of establishing the right to a class action.Shaver v. Standard Oil Co. (1990), 68 Ohio App.3d 783.
 {¶ 21} Class certification in Ohio is based upon Rule 23 of the Ohio Rules of Civil Procedure, which is identical to Rule 23 of the Federal Rule of Civil Procedure. In Warner v. Waste Management, Inc.
(1988), 36 Ohio St.3d 91, the Ohio Supreme Court set forth seven elements for a class to be certified. In determining whether a class action is properly certified, the first step is to ascertain whether the threshold requirements of Civ.R. 23(A) have been met. Once those requirements are established, the trial court must turn to Civ.R. 23(B) to discern whether the purported class comports with the factors specified therein. Before a class may be certified as a class action, a trial court must make seven affirmative findings. Warner, supra, 36 Ohio St.3d 91, at paragraph one of the syllabus. Five prerequisites are explicitly set forth in Civ.R. 23, while two prerequisites are implicit in the rule. Id. The two implicit prerequisites are that (1) the class must be identifiable and unambiguously defined, and (2) the class representatives must be members of the class. Id. at 96.
 {¶ 22} The four delineated prerequisites in Civ.R. 23(A) include the following: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Id. at 97, quoting Civ.R. 23(A).
 {¶ 23} Finally, the trial court must also find that one of the three Civ.R. 23(B) requirements is met before the class may be certified. Id. at 94. See, also, Hamilton v. Ohio Savings Bank (1998),82 Ohio St.3d 67, 71. If the class movant fails to meet one of these requirements, class certification must be denied. Civ.R. 23(B)(3) requires that the questions of law or fact to the members of the class predominate over any questions affecting individual members. As stated inHamilton, "Civ.R. 23(B)(3) provides that an action may be maintained as a class action if, in addition to the prerequisites of subdivision (a), the court finds that the questions of law or fact, to the members of the class, predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair, efficient adjudication of the controversy."82 Ohio St.3d at 79-80.
 {¶ 24} The matters pertinent to the findings include: (a) the interest of members of the class and individually in controlling the prosecution of defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; (d) the difficulties likely encountered in the management of the class action.
 {¶ 25} In order to satisfy the predominance requirement, the plaintiff must show that the common questions of law and fact represent a significant aspect of the class and are capable of resolution for all members of the class in a single adjudication. Shaver v. Standard OilCo. (1990), 68 Ohio App.3d 783, 799. The mere assertion that common issues of law or fact predominate does not satisfy the express requirements under the rule. As the court in Waldo v. North American VanLines, Inc. stated:
 {¶ 26} "[It] is not simply a matter of numbering the questions in the case, labeling them as common or diverse, and then counting them * * *. It involves a sophisticated and necessarily judgmental appraisal of the future course of litigation * * *." 102 F.R.D. 807 (W.D.Pa. 1984).
 {¶ 27} Where the circumstances of each proposed class member need to be analyzed to prove the elements of the claim of defense, then individual issues would predominate and class certification would be inappropriate. Schmidt v. Avco Corp. (1984), 15 Ohio St.3d 310, 314.
 {¶ 28} As previously stated, five prerequisites are explicitly set forth in Civ.R. 23, while two prerequisites are implicit in the rule.Warner, supra at 96. We first address the implicit requirement that the purported class be identifiable and unambiguous under Civ.R. 23(A). A class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member. 7A Charles Alan Wright, Arthur R. Miller Mary Kay Kane, Federal Practice and Procedure (2 Ed. 1986) 120-121, Section 1760. The class definition must be precise enough "to permit identification within a reasonable effort." Warner v. Waste Mgt., Inc. (1988), 36 Ohio St.3d 91,96.
 {¶ 29} The class, as certified by the trial court, is defined as "all persons who contracted with defendants for security alarm and monitoring services, or similar goods and services." Additionally, the following subclasses are defined:
 {¶ 30} "Subclasses of Plaintiffs are composed of all persons who have purchased or will purchase security alarms and monitoring services from Meister in homes that were sold to Plaintiffs from (1) Defendant Rysar Properties since November 17, 1995; and (2) from Defendant Cresthaven Development, Inc. since November 17, 1995. The third subclass is composed of all Plaintiffs that contracted with Meister for security alarms and monitoring services through other deceptive and unconscionable practices since November 17, 1995."
 {¶ 31} We note that the primary rationale of the class action is to promote efficiency and economy in litigation. Vaccariello v. Smith Nephew Richards, Inc. (2002), 94 Ohio St.3d 380. In reviewing the certified class, as defined by the lower court, it is obvious that the class description is overly broad and is not sufficiently definite so that it is administratively feasible for the court to determine if a particular individual is a member. Warner, supra. The class definition includes "all persons who contracted with the defendants for security * * * services." Within this general definition, the lower court created separate subclasses to include 1) individuals that purchased homes from Rysar and have or will purchase security services from Meister; 2) individuals that purchased homes from Cresthaven and have or will
purchase security services from Meister; and 3) all remaining individuals that contracted with Meister.
 {¶ 32} The certified class as defined, including the lower court's attempt at creating subclasses, includes in effect every individual that purchased security services through Meister since November 17, 1995. The class as defined includes all individuals who purchased homes through Rysar or Cresthaven and thereafter entered into security agreements with Meister; all individuals that purchased homes from Rysar or Cresthaven but have yet to purchase security services through Meister; and any remaining individuals that independently purchased security services through Meister, regardless of whom they purchased their homes from.
 {¶ 33} First, the class as defined includes individuals who have not been affected and may never be affected by the defendants' alleged illegal actions. The test of a class definition is whether the means is specified at the time of certification to determine whether a particular individual is a member of the class. Hamilton, 82 Ohio St.3d at 73l; see, also, Simmons v. Am. Gen. Life Acc. Ins. Co. (2000),140 Ohio App.3d 503. Here the class definition includes individuals who may obtain security service agreements in the future and who therefore cannot be identified at the time of certification as a member of the class. Further, the class definition, including subclasses, in effect includes every individual that has purchased security services from Meister since November 17, 1995, regardless of whether that individual purchased their home from Rysar or Cresthaven.
 {¶ 34} Therefore, the class as defined is overly broad because it includes all individuals that purchased security services from Meister who undoubtedly have no claim whatsoever against Rysar or Cresthaven. To include Rysar and/or Cresthaven in a class definition which includes any individual that Meister has contracted with is overly broad and ambiguous as a matter of law. Under the defined class, the lower court would have to conduct an individualized inquiry with respect to each individual's circumstances surrounding the alleged illegal conduct of Meister individually and the other defendants, Rysar and Cresthaven, in order to determine whether that individual was affected. This would obviate the purpose of a class action.
 {¶ 35} Similarly, in Petty v. Walmart (2002), 148 Ohio App.3d 348, the Second Appellate District affirmed the lower court's order, which denied the plaintiffs' motion for class certification. In Petty, the plaintiffs sought to certify a class consisting of all current and former hourly employees of Ohio Wal-Mart stores who had been required and/or permitted to work off the clock without compensation and/or miss their lunch and meal breaks from the period beginning fifteen years prior to the filing of the complaint. The plaintiffs sought to ascertain this proposed class through Wal-Mart's business records and time clock exceptions. The trial court rejected this argument, and the Second Appellate District affirmed the trial court's rejection of the argument stating, "Wal-Mart's time clock records merely show whether an employee took all of his or her breaks and meals and whether the employee punched in on time. Even if the report shows that an employee missed a break or meal, it does not give the reason for the missed break. * * * These records clearly do not tell the court whether an employee missed a break because she was required or permitted to by Wal-Mart."
 {¶ 36} The class as defined and the means of ascertaining the class in the instant matter would not permit the identification of the class members within a reasonable effort. Identifying potential class members as individuals that purchased or will purchase security services from Meister through deceptive or unconscionable practices is highly individualized. Further, determining what actions constitute deceptive or unconscionable practices is highly speculative at best. The business records of the defendants merely identify individuals that purchased security services, but will not assist in determining which individuals were subjected to the alleged illegal practices of the defendants.
 {¶ 37} Under the current definition, the court is left with the burden of a highly individualized adjudication to determine which of the countless individuals qualify as class members. The court would have to investigate each individual circumstance to determine if the contracting parties were subject to or believed to be subject to the alleged illegal practices of the defendants. Moreover, the class as defined assumes that each and every individual that ever contracted with Meister since 1995 was subjected to the "alleged" illegal sales practices, an assumption that is clearly erroneous since numerous customers undoubtedly are satisfied with their service.
 {¶ 38} In reviewing the record, we can only conclude that there is no administratively feasible method for determining the class under the lower court's definition. The trial court would have to make individual inquiries into each putative class member's exposure to the alleged illegal practices. The class as defined is not identifiable, is overly broad, and is ambiguous.
 {¶ 39} Moreover, the purpose of the class action is to obviate the need to examine each class member's individual position by establishing a generalized body of evidence sufficient to prove or disprove all of the issues presented by the class. Petty, supra at 348. Under the current class definition, this purpose is not achieved because the surrounding circumstances of each individual must be examined in order to determine class membership. Simply, under the facts as presented, the claims of the individual plaintiffs are undoubtedly more properly suited for individualized litigation rather than class action.
 {¶ 40} Therefore, the lower court's grant of class certification is hereby reversed because the class as defined fails to meet the prerequisites for class certification pursuant to Civ.R. 23(A). The instant matter is hereby remanded to the lower court for further proceedings consistent with this opinion.
Judgment reversed and remanded.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellants recover of said appellees costs herein.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, A.J., and MICHAEL J. CORRIGAN, J., concur.
[1] The appellees' Motion for Class Certification and Supplemental Motion for Class Certification named the following companies and individuals as defendants: 1) Meister Protection Services (Meister); 2) Edward Burian and Hanne Jonikat, president and vice president of Meister Protection Services; 3) Rysar Properties, Inc. (Rysar); 4) Ken Lurie, president of Rysar Properties, Inc.; 5) Cresthaven Development (Cresthaven); and 6) Juraj Dedic, president of Cresthaven Development.