[Cite as *MidFirst Bank v. Biller*, 2010-Ohio-6067.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

**MIDFIRST BANK,**

    **PLAINTIFF-APPELLEE,**               **CASE NO.  13-10-13**

    **v.**

**JOSEPH P. BILLER, ET AL.,**            **O P I N I O N**

    **DEFENDANTS-APPELLANTS.**

**Appeal from Seneca County Common Pleas Court**
**Trial Court No. 2008-CV-0649**

**Judgment Affirmed**

**Date of Decision:  December 13, 2010**

**APPEARANCES:**

    *Leslie O. Murray and John T. Murray*  **for Appellants**

    *Daniel JT McKenna, Martin C. Bryce, Jr. and Kevin L. Williams*  **for Appellee**

**WILLAMOWSKI, P.J.,**

{¶1} Defendants-Appellants, Joseph P. Biller, et al. ("the Billers"), appeal the decision of the Seneca County Court of Common Pleas denying class certification in their mortgage foreclosure case involving Appellee-Plaintiff, MidFirst Bank ("MidFirst"). The Billers maintain that the trial court erred in finding that their petition for class certification failed to meet the requirements of Civil Rule 23. For the reasons set forth below, the judgment is affirmed.

{¶2} On October 18, 2000, Joseph and Deborah Biller (husband and wife) signed a note for an $84,456 loan from Cendant Mortgage Corporation. The loan was for thirty years, at 8.375% interest, and was secured by a mortgage on the Billers' home in Tiffin. MidFirst purchased the FHA loan and the mortgage was assigned to MidFirst on January 10, 2004. Shortly thereafter, Midland Mortgage Co. ("MMC") began to service the loan. Non-party MMC[1] is the entity that services most loans for MidFirst.

{¶3} Between 2004 and early 2008, the Billers defaulted on their loan several times resulting in three foreclosure actions and four separate loan modifications. The Billers avoided each foreclosure by negotiating a loan

---

[1] MMC is not a party to the foreclosure and Appellants have not filed a third party complaint or otherwise joined MMC in this action. MMC has not been served with any legal process. Appellants assert that MMC is wholly owned by MidFirst and services loans for MidFirst, thereby qualifying as a debt collector under the FDCPA.

modification and reinstatement of their loan with MMC. The Billers paid $3,449 in conjunction with the last modification and reinstatement.

{¶4} When the Billers again defaulted on their loan after this modification, MidFirst initiated a fourth foreclosure action on December 18, 2008. The Billers responded by filing an "Answer and Counterclaims *** with Class Allegations" against MidFirst and MMC on February 13, 2009. The Billers asserted class action counterclaims for breach of contract and unjust enrichment against MidFirst and MMC and for violations of the Fair Debt Collection Practices Act ("FDCPA") against MMC.[2] They submitted the following class definition:

> **All persons who were or are mortgagors of real estate of their residence whose servicing rights of their mortgage is or was owned by Midfirst Bank from December 1, 2003, to the present and who were sued by Midfirst Bank in foreclosure and subsequently signed a loan modification agreement with Midfirst Bank. (Reply Brief in Support of Class Certification, p. 18.)**

{¶5} Appellant's primary complaint is that MidFirst and MMC improperly applied payments to "unreasonable and excessive" fees before it applied payments to principal, interest, taxes and insurance (or "PITI"), as specified in the mortgage loan documents. At the time of their fourth loan modification and reinstatement, the Billers owed over $7,000 in attorney fees

---

[2] Appellants also asserted individual claims (common law actions separate from the class) for an accounting against MidFirst and MMC and violation of the Real Estate Settlement Procedures Act against MMC.

associated with the previous foreclosure actions. After lengthy oral negotiations with MMC, an agreement was reached and the Billers paid $3449. This payment was applied to their outstanding fees. The Billers complain that this payment should have been applied to their monthly payments of principal, interest and escrow pursuant to the priority of payment order specified in Section 3 of the mortgage note.[3] Therefore, the Billers argue that MidFirst wrongly diverted funds when it "unilaterally altered" the mortgage's payment priority. The Billers state that MidFirst calls this policy a "designation for special purposes" and that "no explanation or documentation is sent to the borrower."

**{¶6}** The Billers further contend that all class members are subject to this "unfair system," because this process occurs through a standardized automated payment and collection system and is in contravention of the terms of the standardized loan agreements. Furthermore, violations of the FDCPA affecting all class members arise out of "the deception of the secret tally of fees never disclosed to the borrower, the misrepresentations as to where the fees are being applied, and the unfair and unconscionable practice of collecting fees not authorized by the note and mortgage ***." (Appellants' Brief, p. 13.)

**{¶7}** MidFirst, however, explains that the Billers negotiated and orally

---

[3] Section 3 of the mortgage states that the lender should apply payments in the following order: 1) mortgage insurance premium, 2) taxes and insurance, 3) interest, 4) principal, and 5) late charges due under the note.

agreed to reimburse these sums as a precondition for the fourth reinstatement of their loan. MMC had assessed attorneys' fees and costs incurred in the previous foreclosures, as was permitted by law and by the express language in the original loan documents. However, MMC did not require the Billers to pay these fees prior to entering into the first three modifications, although it was understood that they would eventually have to be paid on the back end of the loan. On the last occasion, MMC advised the Billers that before a fourth loan modification offer would be extended, they had to reimburse MMC for the outstanding attorneys' fees and costs incurred in the prior foreclosures, totaling over $7,000 at the time.

{¶8} After several months of negotiations, the parties agreed that the Billers would pay a portion of the fees and costs incurred in the prior foreclosures, totaling $3,449, as a *precondition* to reinstatement. The Billers orally agreed to reimburse this amount and did pay these sums. Mr. Biller acknowledged in his deposition that they understood that the precondition payment was not a payment towards the PITI. (J. Biller Dep., p. 142:3-8.)

{¶9} On November 5, 2009, the Billers moved for class certification of their FDCPA claims against non-party MMC, and their breach of contract and unjust enrichment claims against MidFirst and MMC. After hearing oral arguments, the trial court filed a detailed judgment entry denying the motion for class certification on March 29, 2010.

{¶10} The trial court found that the Billers' claims did not satisfy the standards for class certification set forth in Civ.R. 23. In order for a class action certification to be granted, the petitioner must meet all seven requirements set forth in Civ.R. 23(A). The trial court held that six of the seven requirements were not met, and specifically discussed the following four reasons why class certification was denied.

{¶11} (1)  *Identifiability of Class* – The trial court found that the Billers' class definition was overly broad, that it did not allow the court to easily identify the class members, and that it did not specifically discuss the FDCPA claim of out-of-pocket expenses. The definition did not specify the number of loan modifications, prior foreclosures, whether the loan modifications had loans that were already in default, whether any attorney's fees had been assessed, or whether those fees were paid. The trial court found that these issues provided for unique and individualized outcomes that would make it nearly impossible to identify whether individuals were members of the overly-broadly defined class.

{¶12} (2)  *Commonality* -- The trial court held that the Billers failed to show that there were questions of law or facts presented in their claims that were common to the proposed class. The FDCPA violation was based upon the oral negotiations and agreement to provide an additional $3,449 upfront prior to reinstating the loan. The court stated that because oral negotiations were

inherently individualized and inherently uncommon, a court would be required to assess each individual oral negotiation in order to discern whether there was a common nucleus of operative facts, and that such a process would directly conflict with the purpose of Civ.R. 23.

{¶13} (3)    *Typicality* – The trial court determined that the Billers' claims were unusual and atypical when placed against the class definition presented and it would not likely match the claims raised by other members of the class.   The issues that the court believed were unique to the Billers were:   their claim of emotional distress, which is inherently individualized; their primary motivation for the suit, which was to save their house (whereas loan modification may have satisfied others); and, there was no indication in the class definition whether other members paid any fees due to the loan modifications.

{¶14} (4)    *Failure to Satisfy One of the Three Requirements of Civ.R. 23(B)* – Civ.R. 23(A) also states that the class must satisfy at least one of the requirements set forth in Civ.R. 23(B).   Although the Billers believed they satisfied two of the three requirements, the trial court found that they did not satisfy any.   Specifically, the court determined that the Billers' motion failed to meet these requirements because, as previously stated, the facts pertinent to the Billers were unique and specific to their situation; they failed to meet the requirement of predominance; and, the fact that the court would be forced to

assess each and every oral negotiation made pursuant to a loan modification would negate the efficiency presented by a class action.

{¶15} The Billers now appeal this decision, presenting the following six assignments of error for our review.

### First Assignment of Error

**The trial court committed error of law to the prejudice of the Defendants-Appellants in finding that the requirements of Civil Rule 23 were not met because the trial court did not apply the elements of the Fair Debt Collection Practices Act Claim to the Rule 23 analysis.**

### Second Assignment of Error

**The trial court committed error of law to the prejudice of the Defendants-Appellants in finding that the requirements of Civil Rule 23 were not met because the court relied on inadmissible oral negotiations in its analysis for breach of a written mortgage contract.**

### Third Assignment of Error

**The trial court erred to the prejudice of the Defendants-Appellants in finding that the requirements of Civil Rule 23(A) were not met because the court did not address the breach of contract or unjust enrichment claims.**

### Fourth Assignment of Error

**The trial court erred to the prejudice of the Defendants-Appellants in finding that the requirements of Civil Rule 23(A) were not met because the court sought information in the class definition not required by Rule 23.**

**Fifth Assignment of Error**

**The trial court erred to the prejudice of the Defendants-Appellants in finding that the requirements of Civil Rule 23(A) were not met because the court relied on issues not relevant to the class claims and did not consider undisputed evidence of standardized procedures for the application of payments in finding there is no commonality and typicality.**

**Sixth Assignment of Error**

**The trial court erred to the prejudice of the Defendants-Appellants in finding that the requirements of Civil Rule 23(B) were not met because the court abused its discretion in finding that the Defendants-Appellants['] situation is unique based on issues not relevant to their claims.**

{¶16} The Ohio Supreme Court has held that "[a] trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion." *Marks v. C.P. Chem. Co., Inc.* (1987), 31 Ohio St.3d 200, 509 N.E.2d 1249, at the syllabus. The application of the abuse-of-discretion standard in reviewing class action determinations is not grounded in a credibility assessment, but in the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket. *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 70, 1998-Ohio-365, 694 N.E.2d 442, citing *Marks*. A trial court's discretion in deciding whether to certify a class action is not unlimited and must be exercised within the framework of conducting a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied. However, "[a] finding of abuse of

discretion, particularly if the trial court has refused to certify, should be made cautiously." *Marks*, 31 Ohio St.3d at 201, 509 N.E.2d at 1252.

{¶17} The following seven requirements must be satisfied before an action may be maintained as a class action under Civ.R. 23: (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met. Civ.R. 23(A); *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 521 N.E.2d 1091. The three Civ.R. 23(B) factors are: the case must present problems of inconsistent judgments; the case must require injunctive relief to prevent a defendant from continuing to harm the class; or, the case must present common issues of fact and law that predominate individual issues.

{¶18} The burden of proving each of these requirements is on the party seeking certification and the failure to prove any one element will result in the denial of class certification. *Robinson v. Johnston Coca-Cola Bottling Group, Inc.*, 153 Ohio App.3d 764, 2003-Ohio-4417, 796 N.E.2d 1, ¶2; *State ex rel. Ogan*

*v. Teater* (1978), 54 Ohio St.2d 235, 247, 375 N.E.2d 1233.  Although a court may not review the merits of the action at the class certification stage, it must examine the nature of the underlying claims for the purpose of determining whether common questions predominate.  *Petty v. Wal-Mart Stores, Inc.*, 148 Ohio App.3d 348, 2002-Ohio-1211, 773 N.E.2d 576, ¶24.

*Second Assignment of Error*

{¶19} We shall address the second assignment of error pertaining to oral negotiations first because the oral negotiations between the Billers and MMC for the payment of $3,449 and the application of that payment constitute the crux of the controversy.  The trial court found that oral negotiations were inherently individualized and if the court had to assess each individual oral negotiation, the process would directly conflict with the purposes of Civ.R. 23.

{¶20} In their second assignment of error, the Billers claim that the trial court committed error of law by relying on "inadmissible oral negotiations" pertaining to a written mortgage "which purports to modify the terms of that written agreement."  The Billers contend that the oral negotiations were inadmissible under the parol evidence rule and, therefore, whatever was said between the Billers and MMC or Midland concerning a modification of the terms of the contract would be inadmissible.

Case No. 13-10-13

**{¶21}** We disagree with the Billers assertions and do not find that the parol evidence rule is applicable to the facts in this case. The parol-evidence rule is a principle of substantive law providing that "a writing intended by the parties to be a final embodiment of their agreement cannot be modified by evidence of earlier or contemporaneous agreements that might add to, vary, or contradict the writing." *Bellman v. Am. Internatl.* Group, 113 Ohio St.3d 323, 2007-Ohio-2071, 865 N.E.2d 853, ¶7, quoting Black's Law Dictionary (8th Ed.2004) 1149. The rule prevents a party from introducing extrinsic evidence of negotiations that occurred before or while the agreement was being reduced to its final written form. Id. at ¶7. However, while the rule bars evidence of *prior or contemporaneous* oral statements to vary the terms of a written agreement, it does not apply to evidence regarding a *subsequent* oral modification of a written agreement or to the waiver of contractual terms by language or conduct. (Emphasis added.) *Hartley v. Miller*, 3d Dist. No. 8-08-33, 2009-Ohio-1923, ¶9; *Uebelacker v. Cincom Systems, Inc.* (1988), 48 Ohio App.3d 268, 273, 549 N.E.2d 1210, 1217. BARRONS LAW DICTIONARY further explains what is not included in the parol evidence rule:

> **Agreements relating to different subject matter and all subsequent agreements (whether oral or written), regardless of their effect on the writing, are not subject to the rule. A subsequent written or oral agreement discharges and supercedes prior agreements, whether oral or written. Even a clause in a written agreement forbidding oral modification may be orally**

> **rescinded and the prior agreement orally modified unless prohibited by a statute \*\*\*.**[4]

BARRON'S LAW DICTIONARY (3rd Ed.1992) 342-43.

{¶22} Another exception to the parol evidence rule is the allowance of extrinsic evidence to prove a condition precedent to a contract. *Beatley v. Knisley*, 183 Ohio App.3d 356, 2009-Ohio-2229, 917 N.E. 2d 280, ¶15. Parol evidence is admissible to prove a separate oral agreement constituting a condition precedent to the signing of a written instrument although the condition precedent was not included in the contract language. Id., citing *Roan v. Hale* (1950), 102 N.E.2d 603, 604, 60 Ohio Law Abs. 559, 560. Courts admit extrinsic evidence of a condition precedent because satisfaction of such a condition must occur before a contract comes into existence. Id. at ¶16, citing *Russell v. Daniels-Head & Assoc., Inc.*, 4th Dist. No. 1600, 1987 WL 13943.

{¶23} In the present case, the Billers entered into three successive loan modifications without being required to pay any attorneys' fees or other expenses up-front. However, when the Billers defaulted on their payments under the third modification, after not making even one payment under this modification, MMC's Delinquency Assistance Center sent the Billers a *written* letter on September 6,

---

[4] Although mortgages usually involve statute of fraud considerations, those issues are not applicable here for several reasons, i.e., the oral agreement did not modify the mortgage, but was a collateral agreement involving a condition precedent to a separate loan payment modification; there were writings involved; and the oral agreement did not take away or confer any interest in the land. See *Nonamaker v. Amos* (1905), 73 Ohio St. 163, 76 N.E. 949.

2007, outlining the requirements that needed to be met *before* they would approve another loan modification repayment plan. The letter stated that "[b]efore the plan can be approved, the following conditions must be met \*\*\*." (J. Biller Dep., Exhibit 13.) The letter then listed over $7,000 for outstanding attorneys' fees that had accrued pursuant to the previous foreclosure actions and reinstatements. Id. Mr. Biller testified that he understood the letter to contain these terms.

> **Q.   The letter reads, and I won't read the entire thing, but the gist of it, would you agree with me is that before a new loan modification can be entered into, you're being required to pay some $7,118 in attorney's fees?**
>
> **A.   Yes.**
>
> **Q.   Was that your understanding of the letter?**
>
> **A.   That was my understanding of the letter.**
>
> **\*\*\***
> **Q.   What, if anything, did you do then after receiving this letter?**
>
> **A.   \*\*\* I got into like negotiations with the bank to get this money down to where we could send them a lump sum to go into modification, we wouldn't lose our house in foreclosure. So it was over several months of phone calls.**
>
> **\*\*\***
>
> **Q.   Did you have any understanding as to what that sum represented?**
>
> **A.   It was the attorney fees.**

(Id. at pp. 134, 142, 147.) Mr. Biller further testified that they were able to orally negotiate the amount they would have to pre-pay down to $3449 and that he understood that they had to pay that amount in order to do another modification to prevent a foreclosure. (Id. at 147.) The Billers agreed to the amount that they would pay as a condition precedent to entering into a fourth loan modification, the Billers sent the payment, and it was applied to the outstanding attorney fees.

**{¶24}** The Billers now argue that their oral agreement cannot be used to alter the priority of payment terms in Section 3 of the written mortgage note and that the parol evidence rule would bar the admission of any of these oral agreements. The Billers maintain that "[t]he parol evidence rule prohibits the court from assessing these oral negotiations." (Appellants' Br., p. 14.) Therefore, the Billers conclude the trial court's finding that it would have to review every oral negotiation made pursuant to a loan modification was an error of law and could not be a basis for finding that their claims did not meet the requirements for class certification.

**{¶25}** After reviewing the correct meaning and usage of the parol evidence rule, it is apparent that it has no application to the facts in this case and does not operate to exclude any evidence of oral agreements pertinent to the claims of the Billers' or any other potential class members. The Billers could orally modify the priority of payments in the mortgage loan agreement without violating the parol

evidence rule because this would be a *subsequent* modification. However, the oral agreement in this case was not a modification of the original agreement; it was a condition precedent to a separate collateral agreement reinstating and modifying the loan payment terms. Evidence regarding oral negotiations concerning conditions precedent and collateral agreements are not barred by the parol evidence rule. Therefore, the trial court did not err in finding that it would be required to assess the individual oral negotiations affecting the loans and modifications of each and every class member.[5]

{¶26} Based on the above, the second assignment of error is overruled. Furthermore, we find that the resolution of this assignment of error is dispositive as to the entire appeal. The Billers believed that because only the express terms of the written contract were admissible, the individual oral agreements were not relevant and could not be considered in determining class certification. However, the trial court was correct in determining that the individual nature of the Billers' oral agreement may not have been representative of any individual oral agreements of the other potential class members.

---

[5] We also note that the admission of evidence concerning the oral negotiations verified that the Billers knew what the $3449 payment was for and how it was to be applied. Their consent to applying this payment to the outstanding attorney fees as a precondition to the reinstatement and modification of their loan abrogates their claims that MidFirst had a policy of charging "secret fees" and applying payments "in contravention to the terms of the note and mortgage." However, because a trial court does not review the merits of the case at the class certification stage, the trial court did not assess the substantive content of the Billers' oral negotiation; it merely acknowledged that individual oral negotiations were involved in these claims which would preclude class certification.

**{¶27}** There was no evidence that the Billers' claims would meet the commonality and typicality requirements in order to qualify for class certification. The unique and individualized situation of the Billers' negotiated agreement makes it uncertain as to whether any other potential class members would share the same claims and a common nucleus of operative facts, even if they fell within the class definition. See *Hamilton*, supra. In fact, the Billers themselves, although meeting the broad class definition, did not appear to have any claims or complaints against MidFirst and MMC relative to their first three foreclosures and loan modifications.

**{¶28}** The trial court did not abuse its discretion in finding the need to assess each individual oral negotiation would directly conflict with the purposes of Civ.R. 23 and that the Billers' claims were unusual and atypical when placed against the class definition they presented. The Billers have failed to meet *at least* two of the requirements of Civ.R. 23(A) required for class certification, commonality and typicality. Because all seven requirements must be met in order to grant class action certification, it is not necessary to examine the other Civ.R. 23 requirements nor to address the Billers' remaining assignments of error. Based on the above, the Billers' assignments of error are either overruled or are moot.

{¶29} Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS, J., concurs in Judgment Only.**

**PRESTON, J., concurs.**

**/jlr**