SAM MAFFEI, AND ALL PERSONS SIMILARLY SITUATED v. ALERT CABLE TV OF NORTH CAROLINA, INC.

No. 477PA85

(Filed 6 May 1986)

**Rules of Civil Procedure § 23— class action—de minimis damages—refusal to certify as class action**

> In a class action against a cable television company based on its failure to provide ESPN television programming during its broadcast of ACC basketball games on ESPN only to subscribers of the "Season Ticket" package, the trial court did not exceed its authority when it established what the legal measure of damages would be if plaintiff prevailed upon the claim alleged and then refused to certify a class action because damages recoverable by any one member of the proposed class would be *de minimis*. N.C.G.S. 1A-1, Rule 23.

ON discretionary review, pursuant to N.C.G.S. § 7A-31 of the North Carolina Rules of Appellate Procedure, of a unanimous decision of the Court of Appeals, reported at 75 N.C. App. 473, 331 S.E. 2d 188 (1985), reversing an order entered by *Battle, J.*, on 28 September 1984.

*Coleman, Bernholz, Dickerson, Bernholz, Gledhill & Hargrave, by Martin J. Bernholz and G. Nicholas Herman, for plaintiff-appellee.*

*Smith, Moore, Smith, Schell & Hunter, by Richard W. Ellis, James L. Gale, and Robert H. Slater, for defendant-appellant.*

BILLINGS, Justice.

On 11 January 1984 plaintiff Sam Maffei filed a civil action against Alert Cable TV of North Carolina, Inc. alleging breach of contract. Plaintiff alleged that he had entered into a contract with defendant whereby plaintiff would pay $7.50 plus $3.00 per month to defendant and defendant "would provide to Plaintiff each month seventeen (17) cable viewing channels (including those designated as 'Expanded Services') as shown on the attached rate card." The attached rate card indicates a basic charge of $7.50 per month for eleven (11) channels plus $3.00 per month for Expanded Services, which consists of six additional channels, including "ESPN Sports Satellite (24 hrs)." Plaintiff further alleged that Alert was not going to show certain live ACC basketball games

being broadcast on ESPN (the Entertainment and Sports Programming Network) to ESPN subscribers unless they paid an additional $75.00 for a package called "Season Ticket." Other claims filed in the same complaint against other defendants subsequently were voluntarily dismissed and have no effect upon the questions presented in this review.

In an amendment to the complaint filed 30 January 1984, the plaintiff alleged that the defendant's breach of contract had taken the form of "blacking out" at least eight games unless the subscribers paid $3.00 for each game. The plaintiff asked for damages for himself and all others similarly situated in the amount of $3.00 per subscriber per program blacked out. In its answer the defendant asked, *inter alia*, that the class action allegations be dismissed for failure to state a cause of action that could be a class action and for failure to describe or define a proper class.

As the result of the lawsuit and of an injunction entered against defendants subsequently dismissed, the defendant did not black out all eight games. There is no dispute that approximately twelve hours of ESPN television time was not provided to the plaintiff because of signal scrambling during five ACC basketball games.

On 13 September 1984 the defendant moved, "with the consent of the plaintiff" that the Court "determine as a matter of law the appropriate measure of damages to be applied" to the breach of contract issue.

The motion came on for hearing before Judge Battle on 28 September 1984. After considering the pleadings, depositions, and affidavits presented by the parties, Judge Battle determined that the proper legal measure of damages was the value of twelve hours of missed ESPN regular programming, as argued by the defendant, and not the cost of subscribing to Season Ticket for the twelve hours, as argued by the plaintiff. Calculations to determine the value of the lost ESPN programming based upon the measure of damages found applicable produced total damages per subscriber which ranged from $.008 to $.29. The variations depended on whether one attributed to ESPN the entire $3.00 paid for Expanded Services or only $.50 (one-sixth of the monthly subscription fee for the six extra channels), and whether all 24 hours or only prime-time hours of programming were factored in. Based

upon his determination that the damages recoverable by any one member of the proposed class could not exceed $.29, Judge Battle entered an order as follows:

> Accordingly, the Court determines that certification of this action as a class action would be inadvisable, inefficient and inappropriate, and in its discretion the Court therefore orders that no class action shall be certified.

The court retained jurisdiction of the case to decide the plaintiff's individual claim for damages.

The plaintiff appealed to the Court of Appeals on the ground that the trial judge had used the wrong measure of damages in his decision not to certify the class. Although neither party raised an issue of the trial court's authority to determine the measure of damages and refuse to certify a class action because of *de minimis* damages, the Court of Appeals said that "[w]hether the court may decide the measure of damages, determine that they will probably be minimal, and deny class certification on grounds of efficiency appears to be a question of first impression." 75 N.C. App. at 475, 331 S.E. 2d at 191.

The Court of Appeals held that the trial judge had exceeded his authority by entering what in effect was an advisory opinion establishing a rule of damages. It vacated the order, directing the trial judge to restrict consideration of class certification to the criteria set out in Rule 23 of the North Carolina Rules of Civil Procedure.

We granted the defendant's motion for discretionary review and now reverse the decision of the Court of Appeals. In deciding whether to certify a class, a trial judge has broad discretion and may consider factors not expressly mentioned in N.C.G.S. § 1A-1, Rule 23, the class action statute. *See English v. Realty Corp.*, 41 N.C. App. 1, 9, 254 S.E. 2d 223, 231, *disc. review denied*, 297 N.C. 609, 257 S.E. 2d 217 (1979).

The Court of Appeals quoted the following from *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78, 40 L.Ed. 2d 732, 748-49 (1974) as supporting its decision to vacate the order of the trial judge:

We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it. He is thereby allowed to obtain a determination on the merits of the claims advanced on behalf of the class without any assurance that a class action may be maintained.

We do not agree with the Court of Appeals that the trial judge conducted a preliminary inquiry into the merits of the suit. Rather, he determined that, as a matter of law, upon the claim as alleged no class member would be entitled to recover more than the value of twelve hours of ESPN regular programming if the plaintiff prevailed on the merits.

What *Eisen* would preclude in this case is a decision by the trial judge that the defendant had or had not breached the contract. Likewise, if the complaint had alleged and the answer had denied a contract to provide specific coverage of ACC games, the trial judge could not have found that the damages were limited to the value of *general* programming without making a preliminary determination of the contested question of contract coverage, which would amount to a determination on the merits of the suit.

Both parties recognize that in this case the trial judge was not calculating the actual amount of the damages, which is a jury question, but instead was delineating what the proper legal measure of damages would be if the plaintiff prevailed upon the claim alleged. Within this framework, the plaintiff contends that since the contract was for services, the legal measure of damages is the reasonable cost of securing performance by other means, which he claimed would be the Season Ticket cost per game actually carried by ESPN and blacked out on his television screen.

The plaintiff cites *Norwood v. Carter*, 242 N.C. 152, 87 S.E. 2d 2 (1955). *Norwood* concerned a claimed breach of a contract to support the grantor during his lifetime in exchange for a conveyance of land. There the Court said:

[t]he damages for failure to furnish services in accordance with the contract therefor are measured by the actual loss sustained as a natural and proximate consequence. And when the contract is to perform specific services, this ordinarily means the reasonable cost of securing performance by other means.

242 N.C. at 155, 87 S.E. 2d at 4. Since the specific services to be performed in *Norwood* were not analogous to the general sports programming the plaintiff was deprived of in our case, the general rule of damages, not the rule applicable to the specific personal services in *Norwood*, applies, i.e., "the amount which will compensate the injured party for the loss which fulfillment of the contract could have prevented or the breach of it has entailed." *Id.*

If the defendant had provided what it was obligated under the contract to provide, the plaintiff would have had twelve more hours of sports programming. In breaching the contract, the defendant gave the plaintiff twelve hours of "snow." The defendant could have satisfied its contractual obligation by providing any sports programming during the twelve hours; it was not alleged to have had a contractual obligation to provide the ACC basketball games. As noted in the trial judge's order of 28 September 1984: "Plaintiff contends that Alert had contracted to provide specific services, that is, 24 hour ESPN general programming . . . ."

In his deposition, consistent with the allegations of his complaint, the plaintiff admitted that he would have been satisfied if some other programming had been on the ESPN channel during the hours in question. If the defendant had put on a wrestling match instead of the ACC game, the plaintiff would not have had a breach of contract claim. The defendants tried to change the terms of the contract and to attach a much higher price to certain of the hours. The measure of the damages of a breach of the actual contract is governed by the value of the programming contracted for, not by the value of select programming under a new proposed contract. The fact that the Season Ticket price demonstrates what the defendant thought the market would bear for a different contract does not make the Season Ticket price the appropriate measure for breach of the original contract.

Had the plaintiff alleged and been able to provide a forecast of evidence that the defendant had contracted to provide the ACC games, not general sports programming, the plaintiff's argument would be better grounded. If, on the other hand, the plaintiff had alleged and the defendant had denied that the defendant had contracted to provide ACC game coverage, the coverage would be an issue of fact to be resolved in a trial on the merits. In the latter case, the measure of damages could not be determined before the nature of the breach had been decided. The Court of Appeals' opinion is erroneously predicated on the latter situation.

The final issue is whether the decision by the trial judge that, in view of the *de minimis* damages recoverable, class action would be "inadvisable, inefficient and inappropriate," was a proper exercise of his discretion.

We recognize that one of the basic purposes of class actions is to provide a forum whereby claims which might not be economically pursued individually can be aggregated in an efficient and economically reasonable manner. As the United States Supreme Court has said:

> Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.

*Deposit Guaranty Nat'l Bank v. Roper,* 445 U.S. 326, 339, 63 L.Ed. 2d 427, 440, *reh'g denied,* 446 U.S. 947, 64 L.Ed. 2d 804 (1980).

However, there is a level at which the costs in pursuing the class action far outweigh any economic good sense and a fair use of judicial resources. One commentator has identified three types of claims which may be presented in the context of a proposed class action:

> the nonviable, the individually nonrecoverable, and the individually recoverable. A claim is nonviable if the expenses an individual would incur in asserting a right to a share of a class judgment would be greater than his expected share of the recovery. A claim is individually nonrecoverable if it would not justify the expense to an individual of independent litigation but would justify the lesser expenditure required to

obtain a share of a class judgment. A claim is individually recoverable if it warrants the costs of separate litigation; that is, if an action to recover the claim would be economically rational regardless of the availability of class action procedures.

Note, *Developments in the Law-Class Actions*, 89 Harv. L. Rev. 1318, 1356 (1976).

We have here a case in the first category, a nonviable claim. The leading treatise on class actions says that "[t]hough this situation is theoretically possible, its actual existence is quite rare. The more usual situation arises when damages of most individual classes are sufficient to support the cost of distribution, but there are some de minimis claims." 2 H. Newberg, Newberg on Class Actions 372, n. 118 (2d ed. 1985). The nonviable claim is not a description of the merits of the cause of action but of the nature of the damages. In the instant case, the recovery of no more than $.29 per claimant would conceivably not even cover the cost of postage and stationery for a claimant to notify the court of his inclusion within the class, disregarding the cost of notifying potential class members of the existence of the action.

Although rare, there have been other cases which have been found to be not certifiable as class actions, in part because of the damages claimed. *See In re Hotel Telephone Charges*, 500 F. 2d 86 (9th Cir. 1974); *Cotchett v. Avis Rent A Car System, Inc.*, 56 F.R.D. 549 (S.D.N.Y. 1972).

In *Cotchett*, the court noted:

While class actions may represent the only available means of redress for consumers whose claims are too small individually to render legal action economically feasible, and while private enforcement of the antitrust laws in consumer transactions may provide an important deterrent to potential violators, such factors must be weighed, along with all other benefits to the class, against the costs of such an action, in terms of convenience and fairness to all involved.

*Id.* at 552-53. In balancing the costs of litigation against the likely benefits, the judge in *Cotchett* concluded that the "amount of recovery on each allegedly illegal transaction in the instant case would be but a fraction of a dollar, trebled. The costs of ad-

ministration of such a large suit promise to reduce substantially even this recovery." *Id.* at 553. He declined to certify the action as a class action.

We recognize that given this type of case, where an individual suit would be so uneconomical as to be in practice foreclosed, a decision not to certify the class is necessarily a form of death knell for the cause of action.

We hold that the trial judge in the instant case made a reasoned decision that the class action did not serve judicial interests of efficiency. We therefore reverse the decision of the Court of Appeals and remand to that court for further remand to the trial court for reinstatement of the order of the trial judge.

Reversed and remanded.