IN THE SUPREME COURT OF NORTH CAROLINA

No. 198A22

Filed 22 March 2024

GARY W. SURGEON and MARLA LEPLEY-STARR, individually and on behalf of those similarity situated

v.

TKO SHELBY, LLC, trading as NISSAN OF SHELBY; INTEGRITY AUTOMOTIVE PROMOTIONS, LLC; A TO Z STAFFED EVENTS, INC.; BRIAN LEACHMAN; MICHAEL SMITH; and TRAVIS K. OSTROM, d/b/a THE TKO GROUP, defendants; DEALER COMPLIANCE SERVICES, INC., cross-claim defendant

Appeal pursuant to N.C.G.S. § 7A-27(a)(4) from an order granting plaintiff's motion for class certification entered on 13 December 2021 by Judge Forrest D. Bridges, in Superior Court, Gaston County. Heard in the Supreme Court on 12 September 2023.

> *Higgins Benjamin, PLLC, by John F. Bloss and Frederick L. Berry, for plaintiff-appellees.*
>
> *Gray, Layton, Kersh, Solomon, Furr & Smith, P.A., by Michael L. Carpenter and D. Scott Hester, Jr.; Wilson Elser Moskowitz Edelman & Dicker LLP, by Jeremy A. Stephenson; and Barnes, Alford, Stork & Johnson, LLP, by Curtis W. Dowling and Matthew G. Gerrald, for defendant-appellants.*

DIETZ, Justice.

Plaintiffs brought this class action lawsuit after receiving a promotional flyer from a car dealership. They allege that the flyer was deceptive and misled them into believing they won a free car or $20,000 cash. Instead, they received a $2 prize.

Plaintiffs allege that they and nearly one thousand other people were harmed by the deceptive promotion.

The trial court certified plaintiffs' case as a class action in a detailed written order, and defendants appealed. At oral argument, the parties acknowledged that the trial court's certification order is internally inconsistent. Specifically, the trial court's order used one class definition to analyze the certification criteria, then changed the definition when actually certifying the class.

This inconsistency requires us to vacate the order and remand for further proceedings. As explained below, we cannot engage in meaningful appellate review of a trial court order—particularly one that includes a discretionary component—when the order suffers from this type of internal contradiction.

Because we vacate the order on this basis, we need not address all of defendants' arguments in this appeal, many of which may be mooted by entry of a new order. We limit our analysis to a few issues, such as conflicts of interest and efficiency concerns, that are likely to persist on remand even after the inconsistency is corrected.

## Facts and Procedural History

### I.      The promotional sales event

In 2018, plaintiffs Gary Surgeon and Marla Lepley-Starr received a promotional flyer in the mail advertising a "Game On Tent Sale Event" held exclusively at Nissan of Shelby, an automobile dealership. The flyer informed

recipients that they had the chance to win one of six "grand prizes," including the largest prize, a 2018 Nissan Sentra SR or $20,000 in cash. In the middle of a grid displaying these grand prizes, there was a scratch-off area that revealed a contest code.

On the flyer, promotional language stated that recipients who "scratch and match" their scratch-off codes with one of the numbers assigned to a prize become a "guaranteed winner." The flyer instructed recipients with a matching code number to call the event hotline and come to the dealership during the sales event to claim their prize.

Although not evident from the flyer itself, the code number beneath the scratch-off portion of all 50,000 flyers was the same. It matched the code number assigned to the largest grand prize, the 2018 Nissan Sentra SR or $20,000 in cash. This scratch-off code was not the code number used to identify the winning contestants of the contest. Instead, each flyer had a separate "activation code" located in a red box under the contest instructions. This code, which was unique to each flyer, was used to identify the contest winners.

After receiving the flyer, plaintiffs each scratched off the area labeled "scratch and match" on their flyers and revealed the code number matching the 2018 Nissan Sentra SR or $20,000 prize. Plaintiffs called the event hotline to claim their prize. An automated answering system congratulated them on winning and prompted them to

come to the dealership to claim their prize.[1]

As a result, both plaintiffs visited the dealership during the sales event. When they tried to claim their prizes, plaintiffs learned that they were not winners of the 2018 Nissan Sentra or $20,000. Dealership agents told plaintiffs that the hidden numbers beneath the scratch-off area of their contest flyers did not mean anything. Instead, the agents explained, the "activation code" in the red box on the flyer determined which prize each recipient had won. Those activation code numbers matched numbers on a poster displayed at the dealership. In addition to the six "grand prizes" on the contest flyer, there was a seventh prize box on the poster that awarded a $2 cash prize. The sales agents at the dealership told plaintiffs that, based on their activation codes, they won the $2 prize.

## II.    The class action lawsuit

Plaintiffs later brought a class action complaint against the dealership and various other parties connected to the sales promotion. They sought to certify a class of "all individuals who received a contest [f]lyer which had the scratch-off number 801602," which was the number matching the 2018 Nissan Sentra SR or $20,000 cash prize, and who then "went to Nissan of Shelby to claim their prizes."

Plaintiffs alleged that defendants created a deceptive contest flyer in violation of North Carolina law governing unfair or deceptive trade practices; breached the

---

[1] As noted below, the complaint alleges that plaintiff Marla Lepley-Starr called the event hotline, but the record indicates she may have called the dealership directly and spoken to a sales agent.

terms of a contract with recipients of the flyer by failing to deliver the prizes; and negligently created and implemented the sales event.

During discovery, defendants produced a log with contact information for approximately 50,000 households that received the flyer in the mail. Defendants also produced a log of the 2,557 people who called the event hotline to claim their prize. That log lists 1,167 people as using the hotline to make an appointment to visit the dealership.

Defendants did not produce any records identifying the people who actually visited the dealership to claim a prize. There is a factual dispute concerning what happened to those records and who is responsible. At this stage in the proceeding, defendants estimate that 927 people visited the dealership during the sales event, although not all of those people necessarily visited to claim a promotional prize.

### III. The trial court's class certification

Several years into the lawsuit, the trial court granted plaintiffs' motion to certify a class. *Surgeon v. TKO Shelby, LLC*, No. 18 CVS 3983, 2021 WL 9772618, at *5 (N.C. Super. Dec. 13, 2021).

The trial court defined the class of plaintiffs in its written order as follows:

> All individuals who received at their place of residence a contest Flyer promoting a contest held at Nissan of Shelby in late April and/or early May 2018, which had the scratch-off number 801602 that matched the number for Prize 5 (the 2018 Nissan Sentra SR or $20,000.00 cash), and who went to Nissan of Shelby to claim their prize.

*Id.* at *5.

In its analysis in the order, the trial court explained that it intended to certify a class of the "Ups." *Id.* at \*4. The trial court's order defines the "Ups" as "the approximately 927 people who called the number and who showed up at the dealership." *Id.* Notably, the definition of "Ups" used in the court's analysis includes a requirement that the class members both "called the number" and "showed up at the dealership." *Id.*

The class definition quoted above, by contrast, applies to anyone who received the flyer and then "went to Nissan of Shelby to claim their prize" regardless of whether they called the event hotline as the flyer instructed. *Id.* at \*5.

Then, in the trial court's instructions regarding notice to potential class members, the court ruled that notice should be sent to the "1,167 people who called the telephone number on the contest flyer and made an appointment to come to the dealership for the sales event," limiting notice to those people who called the event hotline *and* made an appointment—a smaller subset of the 2,557 people who called the hotline to claim a prize, and who may have gone to the dealership without making an appointment. *Id.*

Defendants appealed the trial court's class certification order directly to this Court under N.C.G.S. § 7A-27(a)(4).

## Analysis

This Court reviews a trial court's class certification order for abuse of discretion. *Fisher v. Flue-Cured Tobacco Coop. Stabilization Corp.*, 369 N.C. 202, 209

(2016). The "test for abuse of discretion is whether a decision is manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision." *Frost v. Mazda Motor of America, Inc.*, 353 N.C. 188, 199 (2000) (cleaned up). Within this analysis, we review the trial court's conclusions of law, including its evaluation of the legal criteria to establish a class, de novo. *Fisher*, 369 N.C. at 209.

## I.     Class certification criteria

We begin our analysis by reviewing the criteria for class certification. Rule 23 of the North Carolina Rules of Civil Procedure permits class actions when the "persons constituting a class are so numerous as to make it impracticable to bring them all before the court." N.C.G.S. § 1A-1, Rule 23(a) (2023).

The party seeking class certification bears the burden to show that a proper class exists, meaning "the named and unnamed members each have an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members." *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 280 (1987).

Beyond this threshold requirement, the party seeking class certification also must satisfy a number of other certification criteria, including: (1) that the class representatives have the ability to fairly and adequately represent the interest of all class members; (2) that there are no conflicts of interest between the class representatives and the unnamed class members; (3) that the class representatives

have a genuine personal interest in the outcome of the suit; and (4) that the class

representatives have the ability to adequately represent class members outside of the

jurisdiction; (5) that the proposed class members are so numerous that it is

impractical to bring them all before the court; and (6) that it is possible to provide

sufficient notice to all putative class members. *Id.* at 282–83.

Once these legal prerequisites are met, the trial court may, in its discretion,

certify a class. *Faulkenbury v. Teachers' & State Emps.' Ret. Sys. of N.C.*, 345 N.C.

683, 697 (1997). In evaluating whether class certification is appropriate, the trial

court should consider "whether a class action is superior to other available methods"

to adjudicate the controversy and whether the class action is "likely to serve useful

purposes such as preventing a multiplicity of suits or inconsistent results." *Crow*, 319

N.C. at 284. The court also should balance the potential benefits of class certification

against "inefficiency or other drawbacks" to class certification. *Id.* This "inefficiency"

includes the possibility that the costs of administering a class action exceed the

plaintiffs' potential recovery. *Maffei v. Alert Cable TV of N.C., Inc.*, 316 N.C. 615, 620

(1986).

Defendants argue that the trial court's class certification order fails to comply

with many aspects of this multi-step test. They first challenge several of the trial

court's conclusions of law, arguing that the class members are not sufficiently

ascertainable; that there are irreconcilable conflicts of interest; and that any common

issues of law or fact do not predominate over the many other issues affecting

individual class members.

Defendants also argue that the trial court abused its discretion by certifying the class because the costs and drawbacks of this particular class far outweigh any benefits to the putative class members. Before we address defendants' arguments, we first address a conflict in the wording and reasoning of the trial court's order.

## II. Conflicting class definitions

In its order, the trial court stated that the "Class consists of the approximately 927 people who called the number and who showed up at the dealership—the 'Ups.'" The court then explained that the plaintiffs "have the names of most class members" because that information is contained in the list of 1,167 people who called the hotline number and made an appointment to go to the dealership to claim their prize.

The trial court used this definition of "Ups"—people who both called the hotline number and went to the dealership to claim a prize—to conduct its class certification analysis, including its analysis of whether class members were sufficiently ascertainable, whether there were conflicts of interest among members of the class, and whether it was possible to provide sufficient notice to class members.

But then, when the trial court certified the class, it used a broader definition that included any person who received the promotional flyer and went to the dealership to claim a prize, regardless of whether that person first called the contest hotline or made an appointment:

> All individuals who received at their place of residence a
> contest Flyer promoting a contest held at Nissan of Shelby

> in late April and/or early May 2018, which had the scratch-off number 801602 that matched the number for Prize 5 (the 2018 Nissan Sentra SR or $20,000.00 cash), and who went to Nissan of Shelby to claim their prize.

This definition of the class does not match the one the court used in its certification analysis.

The mismatch between the class the trial court analyzed and the one it ultimately certified requires us to vacate the order and remand the matter for further proceedings. We cannot engage in meaningful appellate review of a trial court order—particularly one that includes a discretionary component—when the court's ultimate decision on an issue cannot be squared with the reasoning used to reach that decision. *See, e.g., Coble v. Coble*, 300 N.C. 708, 714 (1980); *Lackey v. Hamlet City Bd. of Educ.*, 257 N.C. 78, 84 (1962). Accordingly, we vacate the trial court's order and remand for further proceedings.

### III. Potential conflicts of interest & inadequate representation

Because we vacate and remand this matter to address the inconsistent class definitions in the order, we need not address all of defendants' arguments in this appeal, many of which may be mooted by entry of a new order on remand. But several of defendants' arguments are intertwined with the mismatched class definitions and warrant further discussion to guide the trial court's analysis on remand.

The first of these issues concerns potential conflicts of interest within the class. To obtain class certification, the named plaintiffs must show that "there is no conflict of interest between them and the members of the class who are not named parties, so

that the interests of the unnamed class members will be adequately and fairly protected." *Crow*, 319 N.C. at 282. Likewise, the named plaintiffs must show that there are no conflicts within the broader class that prevent class member interests from aligning on key factual or legal questions. *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118–19 (2d Cir. 1999). These intraclass conflicts, depending on their extent, could require certification of subclasses with separate counsel, or could preclude class certification altogether. *Id.*; *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 864–65 (1999).

Here, some of plaintiffs' claims raise potential conflict-of-interest concerns. For example, plaintiffs' contract claim relies on the Court of Appeals' holding in *Jones v. Capitol Broad. Co., Inc.*, 128 N.C. App. 271, 273–74 (1998). In *Jones*, the plaintiff filled out an entry form for a public raffle, with hopes of winning a new Ford F-150 pickup truck. *Id.* at 272. After the plaintiff submitted the form, defendants called plaintiff and informed him that he had won the truck. *Id.* Later that day, defendants again called plaintiff to tell him that he had not won the contest and the truck had been given to someone else. *Id.* at 272–73.

The Court of Appeals held that this type of contest can create contractual rights. *Id.* at 273. Relying on cases from other jurisdictions, the court held that "advertising a promotion contest to the public is in the nature of an offer. An enforceable contract is formed when a party accepts that offer and consideration is provided by entering the contest and complying with all of the terms of the offer." *Id.* at 274.

Importantly, under the contract theory articulated in *Jones*, the contest participant must have complied with "all of the terms of the offer"—meaning the contest rules set out in the promotion. *Id.*

Assuming plaintiffs proceed under the contract theory articulated in *Jones*, the requirement that contest participants must have complied with all terms of the offer could create potential conflicts of interest among class members. The "terms of the offer" in these contest cases generally are understood to mean the specific rules or instructions contained in the promotional material. *Id.*

The flyer in this case contains instructions telling winners to call the event hotline number and then go to the dealership immediately to claim their prize:

> HOW TO WIN: SSCRATCH [sic] OFF THE CIRCLE IN THE DICE BELOW AND MATCH THE ACTIVATION CODE. IF THE SCRATCH OFF BELOW MATCHES ONE OF THE SIX LUCKY NUMBER GAME PRIZE BOXES, YOU ARE A GUARANTEED WINNER OF ONE OF THESE PRIZES! CALL THE EVENT HOTLINE NOW AT 980.289.4680 & PROCEED TO NISSAN OF SHELBY IMMEDIATELY!

At the bottom of the flyer, there are additional instructions stating that participants whose scratch-off reveals winning numbers should "call the event hotline" and "proceed to the dealership immediately to claim your prize."

On the reverse side of the flyer, large instructions next to the "SWEEPSTAKES PRIZE BOARD" with images of the prizes states: "If your scratch off matches a lucky number prize box YOU HAVE WON! CALL 908.289.4680 & be sure to have your activation code ready. Then, come to dealership to claim your prize!"

-12-

Finally, in very small print at the bottom of the flyer, there is a lengthy statement with more specific contest rules, such as information about who is eligible and when the contest expires. Those rules state that "in order for the grand prize to be awarded, the randomly selected individual designated to receive the winning mail piece must redeem the mail piece in person, and their name and address must match the information on file with promoter." These fine-print rules do not mention a requirement to call the event hotline.

If, as plaintiffs allege, this contest language is an offer under *Jones*, then acceptance of the offer requires complying with the specific terms set out in the offer. *Jones*, 128 N.C. App. at 274. This raises a thorny question about the purported contract language in this case: Is calling the event hotline a term of this purported contract? After all, the promotional flyer repeatedly instructs contestants to do so before going to the dealership to claim the prize.

The answer to this question is meaningful because, as noted above, the trial court's class certification analysis focused on a putative class (the so-called "Ups") that both called the hotline and went to the dealership. To this potential class, assessing whether a call to the hotline is a contract term or not is irrelevant, because they complied with that potential contract term.

By contrast, the class that the trial court actually certified—everyone who received the winning contest flyer and then went to the dealership—includes an unknown number of potential class members who did *not* call the event hotline.

Indeed, there is even evidence in the record suggesting that one of the named plaintiffs, Marla Lepley-Starr, did not call the event hotline as alleged in the complaint (the record suggests she may have called the dealership directly and spoken to a sales agent).

Assuming plaintiffs established a valid contract under *Jones*, class members who did not call the event hotline could face contract hurdles that other class members do not. This is precisely the sort of potential conflict that must be examined and resolved in the class certification order. *Crow*, 319 N.C. at 282.

Thus, on remand, the trial court should examine whether the proposed class creates conflicts of interest and, if so, take appropriate steps to remedy the conflict, such as dividing the class into subclasses with separate counsel, or denying class certification of this proposed class altogether. *Beroth Oil Co. v. N.C. Dep't of Transp.*, 367 N.C. 333, 343 (2014); *Dewalt v. Hooks*, 382 N.C. 340, 350 (2022); *Ortiz*, 527 U.S. at 864–65; *Boucher*, 164 F.3d at 118–19.

## IV.    Potential inefficiencies in the class

Another issue highlighted by the mismatch in class definitions is the potential for inefficiencies that could render class certification inappropriate.

Before certifying a class, the trial court must balance the potential benefits of certifying the proposed class against any "inefficiency or other drawbacks." *Crow*, 319 N.C. at 284. The entire notion of class actions is grounded in this concept of efficiency; class actions provide a means for potential litigants with valid legal claims to have

those claims "aggregated in an efficient and economically reasonable manner." *Maffei*, 316 N.C. at 620.

Thus, although class certification analysis ordinarily does not involve an inquiry into the merits of the plaintiffs' claims, it is appropriate for the trial court to consider, as a matter of law, what remedies would be available if the plaintiffs prevailed on their claims.

In *Maffei*, for example, the trial court determined that the "damages recoverable by any one member of the proposed class could not exceed $.29," and therefore "certification of this action as a class action would be inadvisable, inefficient and inappropriate." *Id.* at 617.

We affirmed the trial court's ruling, holding that class members' recovery "would conceivably not even cover the cost of postage and stationery for a claimant to notify the court of his inclusion within the class." *Id.* at 621. We further held that, when "balancing the costs of litigation against the likely benefits," the costs of administering a class action, compared to the plaintiffs' potential recovery, may render the class action so inefficient that it does not warrant certification. *Id.*

On remand in this case, there are similar analyses that may be appropriate, depending on the class actually certified. For example, the complaint asserts claims for unfair and deceptive trade practices and negligence. The remedy for both negligence claims and unfair and deceptive trade practices claims is damages based on the actual injury suffered by the claimant. *Hansley v. Jamesville & Washington*

*R.R. Co.*, 115 N.C. 602, 605 (1894) (negligence); *Pearce v. Am. Def. Life Ins. Co.*, 316 N.C. 461, 471 (1986) (unfair and deceptive trade practices).

Defendants contend that the only actual injury applicable to these claims is potential class members' wasted time traveling to the dealership and unsuccessfully attempting to claim the grand prize. The value of this wasted time, defendants contend, is so "de minimis" that it precludes class certification under *Maffei*. Plaintiffs, by contrast, contend that each class member suffered an actual injury equal to "the $20,000 grand prize" itself.

On remand, the trial court should examine the potential recovery available for each of plaintiffs' claims and assess whether some or all of those claims present the problem identified by *Maffei*, where the costs of litigating that claim so greatly exceeds class members' potential damages that it renders class certification prohibitively inefficient. 316 N.C. at 617, 621. If so, the court should consider whether, in its discretion, some or all of plaintiffs' claims are inappropriate for class certification.

## Conclusion

Because the trial court's class certification order is internally inconsistent, we vacate that order and remand for further proceedings.

VACATED AND REMANDED.